2018 IL App (4th) 160385

NO. 4-16-0385

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 16, 2018
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Clark County |
| GARY G. HAMMONS, | ) | No. 13CF75 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Tracy W. Resch, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court, with opinion.
Justices DeArmond and Turner concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Gary G. Hammons, challenges the reasonableness and constitutionality of some conditions the Clark County circuit court imposed on his probation. Also, he requests that we vacate some fines the circuit clerk purported to levy against him and that we order the correction of an erroneous notation the clerk made in the record as to the amount of restitution he still owes.

¶ 2        We hold that (1) defendant has procedurally forfeited his objections to the probationary conditions; (2) the doctrine of plain error, invoked by him, does not avert the forfeiture; and (3) we lack subject-matter jurisdiction to address his remaining arguments.

¶ 3                                    I. BACKGROUND

¶ 4            On June 10, 2014, defendant entered a negotiated plea of guilty to two counts of

the information: count II, residential burglary (720 ILCS 5/19-3(a) (West 2012)), and count III,

theft (*id.* § 16-1(a)(1)).

¶ 5            On September 22, 2014, the trial court sentenced him to eight years'

imprisonment for count II, to be followed by 30 months' probation for count III.

¶ 6            Two conditions of the probation were that defendant (1) "not associate with any

person who ha[d] a misdemeanor or felony drug conviction" and (2) "[s]ubmit to warrantless

searches by [the] probation officer of his/her person, property (real estate and personal), [and]

vehicles[,] including[,] but not limited to[,] the residence and curtilage." He never objected to

those conditions.

¶ 7            The trial court ordered defendant to pay "[c]osts," which "the State previously

estimated in the amount of $857" (the record does not appear to contain an itemization of these

"[c]osts"). The court also ordered him to pay $42,529 in restitution but gave him credit against

that amount for $21,382 in restitution previously paid, *i.e.*, $15,000 that codefendant Joshua

Houle had paid, $1275 from codefendant Jessica Creech's bond, $953 from codefendant Shawn

Morris's bond, $1654 in currency and coins seized from defendant after his arrest, and

defendant's bond of $2500. Thus, the court calculated the net amount of restitution owed by

defendant to be $21,147 ($42,529 minus $21,382 equals $21,147).

¶ 8            Afterward, the circuit clerk imposed additional assessments on defendant,

including a court finance assessment of $100, a violent crime victim's fund assessment of $200,

a medical cost assessment of $20, and two circuit clerk fees of $80 apiece. The clerk also

represented, in a certified printout dated January 16, 2018, that defendant still owed the full

amount of $42,529 in restitution—although, as the trial court had acknowledged in the sentencing hearing, a total of $21,382 in restitutionary payments already had been made.

¶ 9                                    II. ANALYSIS

¶ 10                A. Defendant's Procedural Forfeiture of the Issue of Whether
                    the Conditions of Probation Are Reasonable and Constitutional

¶ 11        Defendant challenges the reasonableness and constitutionality of two of the conditions the trial court imposed on his probation. Those two conditions were that he (1) "not associate with any person who ha[d] a misdemeanor or felony drug conviction" and (2) "[s]ubmit to warrantless searches by [the] probation officer of his/her person, property (real estate and personal), [and] vehicles[,] including[,] but not limited to[,] the residence and curtilage."

¶ 12        In his motion to reconsider the sentence, defendant never mentioned either of those probationary conditions. Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) required him to raise any sentencing issues in his motion to reconsider the sentence and warned that omitting any such issues from the motion would result in their forfeiture on appeal. The rule provides as follows:

"(d) Appeal by Defendant From a Judgment Entered Upon a Plea of Guilty. No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment.

***

The motion shall be in writing and shall state the grounds therefor. ***

\*\*\*

"\*\*\* Upon appeal[,] any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived." Ill. S. Ct. R. 604(d) (eff. July 1, 2012).

Although the rule says "waived," it really means "forfeited." Courts tend to use the terms interchangeably, but, to be precise, a "waiver" is the voluntary relinquishment of a known right, whereas a party "forfeits" an issue—voluntarily or not—by failing to raise the issue earlier as procedural rules required. *People v. Blair*, 215 Ill. 2d 427, 444 n.2 (2005).

¶ 13    Because defendant's motion for reconsideration of the sentence never mentioned any conditions of probation, one might assume that, under Rule 604(d), any issue regarding those conditions would be forfeited. In *In re J.W.*, 204 Ill. 2d 50, 61 (2003), however, the supreme court held that when a defendant (or, in that case, a respondent) appealed the conditions of probation, Rule 604(d) was inapplicable because, instead of "appeal[ing] from [the] judgment" of probation (Ill. S. Ct. R. 604(d) (eff. July 1, 2017), the defendant appealed the *conditions* of the judgment. The judgment was the sentence, *i.e.*, probation (*cf. People v. Salem*, 2016 IL 118693, ¶ 23 (the final judgment in a criminal case is the sentence)), and instead of challenging the sentence itself, the respondent in *J.W.* challenged some of the conditions of the sentence—he had no objection to being sentenced to probation in lieu of imprisonment; he objected merely to some of the conditions of the probation. For that reason, according to the supreme court, his challenge did not fit within the language of Rule 604(d). *J.W.*, 204 Ill. 2d at 61. In accordance with *J.W.*, we conclude that Rule 604(d) poses no obstacle to our consideration of defendant's argument that the two conditions of probation are unreasonable and unconstitutional.

¶ 14 Even so, the common law poses an obstacle. Apart from Rule 604(d), there is a common law rule that issues never raised in the trial court are deemed, on appeal, to be procedurally forfeited. *People v. Scharlau*, 141 Ill. 2d 180, 203 (1990); *People v. Holloway*, 86 Ill. 2d 78, 91 (1981). There are exceptions to this common law rule. The constitutionality of a criminal statute can be challenged at any time (*J.W.*, 204 Ill. 2d at 61). In this appeal, however, defendant does not challenge the constitutionality of a criminal statute; rather, he challenges the constitutionality of some probationary conditions that the trial court created on its own. Also, to name another exception, a defendant may raise a claim of ineffective assistance for the first time on appeal. *People v. Jarrell*, 248 Ill. App. 3d 1043, 1049 (1993). (We will address defendant's claims of ineffective assistance later in this opinion.) Otherwise, a constitutional issue, such as the constitutionality of a condition of probation, can be forfeited just like any other issue by failing to raise it in the proceedings below. See *People v. McClendon*, 197 Ill. App. 3d 472, 482 (1990); *People v. Visnack*, 135 Ill. App. 3d 113, 118 (1985). Raising no objection, in the trial court, to court-created conditions of probation results in a forfeiture of the issue on appeal, under supreme court precedent. See *Scharlau*, 141 Ill. 2d at 203; *Holloway*, 86 Ill. 2d at 91.

¶ 15 B. Defendant's Invocation of the Doctrine of Plain Error

¶ 16 1. *The Threshold Question of Whether There Was an Error That Was "Plain," That Is, Clear or Obvious*

¶ 17 Defendant argues that the doctrine of plain error should avert the forfeiture in this case. Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." A "plain error" is an error that is *clear* or *obvious*. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 n.2 (2007). Thus, under the plain-error doctrine, the existence of an error is not

enough to avert a forfeiture, even if the error is genuinely an error. Not even reversible error is enough.

> "[S]hort of a conclusion that an asserted error is a 'plain' one, the so-called plain error doctrine offers no basis to excuse a procedural default. [Citation.] The point is crucial, for while all plain errors are reversible ones, not all reversible errors are also 'plain' for purposes of Rule 615(a)." *People v. Keene*, 169 Ill. 2d 1, 17 (1995).

The plain error doctrine is not a backdrop to catch merely arguable issues that could have been raised in the trial court. The error had to be manifest or patent.

¶ 18       We now will consider the probationary conditions of which defendant complains, to determine whether the trial court committed a *plain* error by imposing the conditions.

¶ 19                     a. The Condition That Defendant Refrain From Associating
                           With Any Person Who Has a Drug Conviction

¶ 20                          i. *The Reasonableness of This Condition*

¶ 21       Section 5-6-3(a) of the Unified Code of Corrections (730 ILCS 5/5-6-3(a) (West 2012)) lists the conditions to which any sentence of probation must be subject. Also, subsection (b) (*id.* § 5-6-3(b)) lists some optional conditions and provides that they are "in addition to other reasonable conditions" the trial court might impose. Thus, the court is not limited to the mandatory and optional conditions listed in section 5-6-3 but may impose "other reasonable conditions" on the defendant's probation. *Id.*

¶ 22       The supreme court and the appellate court "have consistently held that any additional condition not expressly authorized by statute may be imposed as long as it is (1) reasonable and (2) relates to (a) the nature of the offense or (b) the rehabilitation of the

defendant as determined by the trial court." (Internal quotation marks omitted.) *People v. Goossens*, 2015 IL 118347, ¶ 13. This standard in *Goossens* tracks the language of section 5-6-3(b): "The [c]ourt may[,] in addition to other reasonable conditions relating to the nature of the offense or the rehabilitation of the defendant as determined for each defendant in the proper discretion of the [c]ourt[,] require that the person [do the enumerated things]." 730 ILCS 5/5-6-3(b) (West 2012).

¶ 23    We cannot say it is clear or obvious that forbidding defendant to associate with people who have drug convictions violates section 5-6-3(b). According to the presentence investigation report, which was filed on July 21, 2014, defendant began using methamphetamine in his early twenties and continued using it for 15 years (he was 41 at the time he was interviewed for the report). He used methamphetamine on Thanksgiving and Christmas 2013 and again in early 2014. He had been in residential substance-abuse treatment three times. He had 10 drug convictions. Commonly, people commit burglary and theft to support their drug habit. To overcome a drug habit, one should remove oneself from the drug culture. Defendant observes, however, that not everyone with a drug conviction is a current user of drugs. That is true, but it does not follow that forbidding defendant to associate with people who have a drug conviction was plainly erroneous. It is not always possible, at first, to tell a fully reformed person from an imperfectly reformed person. Arguably, it would be best for defendant to avoid the risk of a misjudgment by refraining from associating with anyone who has a drug conviction.

¶ 24              ii. *The Constitutionality of This Condition*

¶ 25              (a) The Asserted Overbroadness of the Condition

¶ 26    Defendant argues that by forbidding him to associate with people who had drug convictions, the trial court committed plain error by unconstitutionally infringing on his right to

freedom of association under the first amendment (U.S. Const., amend. I), made applicable to the states by the term "liberty" in the fourteenth amendment (U.S. Const., amend. XIV). See *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 336 n.1 (1995).

¶ 27    The relevant constitutional standard resembles section 5-6-3(b) in that "the overriding concern is reasonableness." *J.W.*, 204 Ill. 2d at 78.

> "[W]here a condition of probation requires a waiver of precious constitutional rights, the condition must be narrowly drawn; to the extent it is overbroad[,] it is not reasonably related to the compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights." (Internal quotation marks omitted.) *Id.*

"To be reasonable, a condition of probation must not be overly broad when viewed in the light of the desired goal or the means to that end." *Id.*

¶ 28    The reasonableness analysis that we performed under section 5-6-3(b) applies just as readily to this constitutional issue. Forbidding defendant to associate with anyone who has a drug conviction is rationally defensible. Burglary and theft often are motivated by a drug habit, and to break his drug habit, defendant should avoid having any relationship with people connected with the drug culture. Even people who claim to have stopped using drugs can still be connected with the drug culture. They might continue to spend time with people who use and distribute drugs, and their companions could become defendant's companions. Therefore, to maximize defendant's chances of rehabilitation and to minimize his risk of a relapse, he should refrain from associating with anyone who has a drug conviction. We cannot say that such logic is clearly or obviously fallacious. "[T]he environment in which a probationer serves probation is an important factor on the likelihood that probation will be successfully completed. The challenged

condition is reasonably related to avoidance of future criminality." *People v. Robinson*, 245 Cal. Rptr. 50, 51 (Cal. Ct. App. 1988) (upholding, against a first-amendment challenge, a probationary condition that the defendant refrain from associating with anyone who has a criminal record).

¶ 29                                         (b) *In re Omar F.*

¶ 30        Defendant compares his case to *In re Omar F.*, 2017 IL App (1st) 171073, ¶ 63, which held that a probationary condition unconstitutionally infringed on the respondent minor's freedom of association by forbidding him to "hav[e] any contact, directly or indirectly, with *** members of street gangs" (internal quotation marks omitted) (*id.* ¶ 61).

¶ 31        One problem with defendant's reliance on *Omar F.* is that *Omar F.* did not exist in September 2014, when the trial court sentenced defendant to probation; therefore, the court's purported plain error could not have been a disregard of (the as of yet nonexistent) *Omar F.* See *People v. Williams*, 2015 IL App (2d) 130585, ¶ 11 ("Plain-error review is reserved for errors that are clear or obvious based on law that is well settled at the time of trial ***." (Internal quotation marks omitted.)). It would make no sense to hold that the court plainly erred by failing to follow *Omar F.* some three years before that decision was issued.

¶ 32        Even if we disregarded this problem of anachronism, applying *Omar F.* to the present case is far from straightforward. There are a couple of significant differences between *Omar F.* and the present case.

¶ 33        First, the condition of probation at issue in *Omar F.* is different from the condition at issue in the present case. Therefore, an analogy must be drawn. For that reason alone, *Omar F.* is not *obviously* on point. See *Piatkowski*, 225 Ill. 2d at 564-65 n.2 (a plain error is an error that is clear or obvious). Defendant does not cite any case that is directly on point; he does not cite

any case like his, in which the probationary condition was refraining from associating with people who had a drug conviction. As we already have noted, a California court upheld, against a first-amendment challenge, a broader probationary condition that the defendant refrain from associating with anyone who had a criminal record (not limited to a drug conviction). *Robinson*, 245 Cal. Rptr. at 51. As the California court observed, "restriction of the right of association is part of the nature of the criminal process." *Id.*

¶ 34    Second, the prohibition in *Omar F.* is broader than the prohibition in the present case. The trial court in *Omar F.* forbade the respondent to "hav[e] any *contact*, directly or indirectly, with *** members of street gangs" (emphasis added and internal quotation marks omitted) (*Omar F.*, 2017 IL App (1st) 171073, ¶ 61), whereas the trial court in the present case forbade defendant to "*associate with* any person who ha[d] a misdemeanor or felony drug conviction" (emphasis added). Having contact with someone and associating with someone are not the same thing. Direct or indirect contact does not necessarily amount to association. To "associate" means "[t]o join[,] often *** in a loose relationship[,] as a partner, fellow worker, colleague, friend, companion[,] or ally." *Birzon v. King*, 469 F.2d 1241, 1243 n.3 (2d Cir. 1972). " 'Association' generally has been interpreted to mean intentional, knowing[,] and substantial contact, or the development of a significant or meaningful relationship, with a convicted criminal over a substantial period of time." *State v. Allen*, 634 S.E.2d 653, 659 (S.C. 2006). Contacting someone does not necessarily entail entering into a relationship with that person. See *Arciniega v. Freeman*, 404 U.S. 4, 4 (1971) ("[The] petitioner was forbidden to 'associate' with other ex-convicts. *** We do not believe that the parole condition restricting association was intended to apply to incidental contacts between ex-convicts in the course of work on a legitimate job for a common employer."). Also, "[g]iven that certain areas of Chicago [were] gang-infested" (*Omar*

*F.*, 2017 IL App (1st) 171073, ¶ 68), the prohibited class in *Omar F.* (" 'members of street gangs' ") was broader than the prohibited class in the present case ("any person who has a misdemeanor or felony drug conviction").

¶ 35    Therefore, just because the probationary condition in *Omar F.* was "overbroad" (*id.* ¶ 63), it is not clear or obvious that the more narrow probationary condition in the present case is overbroad. See *People v. Albea*, 2017 IL App (2d) 150598, ¶ 17 ("The first step in plain-error review is to determine whether clear or obvious error is present."). Conditioning defendant's probation on his refraining from associating with people who had a drug conviction was not plain error. The plain-error doctrine does not avert the procedural forfeiture of this issue.

¶ 36    b. The Condition That Defendant Submit to Searches by the Probation Officer

¶ 37    The other probationary condition that defendant challenges, for the first time, on appeal, is that he "[s]ubmit to warrantless searches by [the] probation officer of his/her person, property (real estate and personal), [and] vehicles[,] including[,] but not limited to[,] the residence and curtilage." Defendant argues that this condition is unreasonable because it does not require reasonable suspicion of criminal activity prior to a search. See *People v. Lampitok*, 207 Ill. 2d 231, 252-253 (2003) ("After balancing these privacy and government interest considerations under the circumstances of this case, we find that the [police] officers were constitutionally authorized to search the motel room only if they had reasonable suspicion of a probation violation by [the defendant].").

¶ 38    Defendant's interpretation of this probationary condition is debatable because, in *People v. Eiland*, 217 Ill. App. 3d 250, 258 (1991), the appellate court stated: "[W]e believe a probationer's waiver of fourth amendment rights extends only to searches conducted upon a reasonableness standard, as any probation condition imposed must be 'reasonable' under the

language of section 5-6-3(b)." Because "the judicial construction of the statute becomes a part of the law" (*People v. Villa*, 2011 IL 110777, ¶ 36), it is arguable that, under *Eiland*, the probationary condition that defendant submit to searches by the probation officer contained an implied qualification that any such search be supported by "reasonable suspicion of a probation violation" (*Lampitok*, 207 Ill. 2d at 252-53). Therefore, the imposition of this probationary condition was not clearly or obviously erroneous, and the plain error doctrine does not avert the procedural forfeiture of this issue, either.

¶ 39        2. *The Further Question of Whether the Probationary Conditions Threaten the Integrity and Reputation of the Judicial Process*

¶ 40        Again, the threshold question in plain-error analysis is whether the error was plain, that is to say, clear or obvious. "The first step in a plain-error analysis is to determine whether a clear and obvious error occurred. [Citation.] If a clear and obvious error occurred, we *then* consider whether either of the two prongs of the plain-error doctrine has been satisfied." (Emphasis added.) *People v. Henderson*, 2017 IL App (3d) 150550, ¶ 37. "[The] [d]efendant bears the burden of persuasion in showing *both* that a clear and obvious error exists and that one of the prongs is satisfied." (Emphasis added.) *People v. Marcos*, 2013 IL App (1st) 111040, ¶ 58. The two alternative prongs of plain error are that "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). Defendant argues only the second prong of plain error.

¶ 41        Before we even reach the second prong, we must find an error that was clear or obvious. See *Henderson*, 2017 IL App (3d) 150550, ¶ 37. As we discussed earlier, defendant fails to make the threshold showing that the two probationary conditions of which he complains for the first time on appeal were clearly or obviously erroneous under the law.

¶ 42 Even if we assumed, for the sake of argument, that defendant made that threshold showing, we would be unconvinced that the probationary conditions meet the second prong of plain error. "[The] second prong of the plain error exception is to be invoked only where the possible error is so serious that its consideration is necessary to preserve the integrity and reputation of the judicial process." (Internal quotation marks omitted.) *People v. Hampton*, 149 Ill. 2d 71, 102 (1992). The purpose of the plain-error doctrine is to protect a defendant from "serious injustices." *People v. Vargas*, 174 Ill. 2d 355, 363 (1996). Even if we accepted defendant's argument that the probationary conditions are unconstitutionally overbroad, it would not follow, *ipso facto*, that they inflict a serious injustice upon him and throw the judicial system into disrepute, considering that (1) he has the right—which, for all that appears in the record, he has never exercised—to request a modification of conditions that prove, in practice, to be onerously overbroad (see 730 ILCS 5/5-6-4(f) (West 2016)) and (2) refusing to consent to a request by the probation officer to conduct a search presumably would not result in the revocation of probation unless the State proved, in the revocation hearing, that the proposed search was reasonable (see *id.* §§ 5-6-4(b), (c); *Eiland*, 217 Ill. App. 3d at 258). Therefore, we find the second prong of plain error to be unmet.

¶ 43 C. The Claim of Ineffective Assistance of Counsel

¶ 44 Defendant argues that defense counsel rendered ineffective assistance by omitting to object to the two probationary conditions.

¶ 45 A claim of ineffective assistance of counsel has two elements: (1) counsel's performance fell below an objective standard of reasonableness (*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)) and (2) the defendant consequently suffered "prejudice," defined as "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*id.* at 694).

¶ 46      We disagree that refraining from objecting to the two conditions of probation was professionally unreasonable. For all we know from the record, defendant might have told defense counsel not to object. See *In re Luis F.*, 177 Cal. Rptr. 3d 174, 180 (Cal. Ct. App. 2009). In any event, defense counsel could have reasonably concluded that, for the reasons we already have explained, an objection to the two probationary conditions would have been futile. "Defense counsel is not required to make futile motions or objections in order to provide effective assistance." (Internal quotation marks omitted.) *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 95. If defense counsel had objected to the broadness of the condition that defendant refrain from associating with anyone who had a drug conviction, the trial court might well have responded that, given defendant's history of drug abuse, this was the safest policy for him and that it was best to err on the side of caution. As for the other probationary condition—that he consent to searches by the probation officer—the court, on the authority of *Lampitok*, might have agreed to add an express requirement of reasonable suspicion. Defendant would have gained nothing, however, because *Eiland* already implied a reasonableness requirement into the search condition.

¶ 47                      D. Fines Imposed by the Circuit Clerk

¶ 48      Defendant argues, and the State concedes, that we should vacate the following three assessments the circuit clerk imposed upon defendant, because they are essentially fines and only the trial court can impose fines: (1) a court finance assessment of $100 (see 55 ILCS 5/5-1101(c) (West 2012); *People v. Smith*, 2014 IL App (4th) 121118, ¶ 54), (2) a violent crime victim's fund assessment of $200 (see 725 ILCS 240/10 (West 2012); *Smith*, 2014 IL App (4th)

121118, ¶ 63), and (3) a medical cost assessment of $20 (see 730 ILCS 125/17 (West 2012); *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 119).

¶ 49 Under *People v. Vara*, 2018 IL 121823, which the supreme court issued after the parties filed their briefs in this appeal, we lack subject-matter jurisdiction to review clerk-imposed fines because article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) confers on the appellate court jurisdiction to review only final judgments entered by the circuit court (*Vara*, 2018 IL 121823, ¶ 13), the final judgment in a criminal case is the sentence (*id.* ¶ 14), and clerk-imposed fines are not part of the sentence the court imposed on defendant (see *id.* ¶ 23). "Because the circuit clerk had no authority to levy any fines against defendant, the recording of the additional fines was invalid and unenforceable. However, the fact that the clerk's action was improper does not mean that defendant can challenge the unauthorized fines through the appeal process." *Id.*

¶ 50                                    E. Duplicate Circuit Clerk Fees

¶ 51 According to a printout the circuit clerk generated on January 11, 2018, and with which we allowed defendant to supplement the record (but see *Vara*, 2018 IL 121823, ¶ 22 (holding that such a "payment status information sheet" is not properly part of the record on appeal)), the circuit clerk imposed two circuit clerk fees in the amount of $80 apiece, one for each count of which defendant was convicted. Defendant argues that the circuit clerk had statutory authority to impose only one of those fees.

¶ 52 Section 27.1a(w)(1)(A) of the Clerks Act provides as follows:

"(1) The clerk shall be entitled to costs in all criminal and quasi-criminal cases from each person convicted or sentenced to supervision therein as follows:

(A) *Felony complaints*, a minimum of $40 and a maximum of $100." (Emphasis added.) 705 ILCS 105/27.1a(w)(1)(A) (West 2012).

¶ 53 The State concedes that the circuit clerk should have charged defendant only one circuit clerk fee since there was only one felony complaint.

¶ 54 Even so, the same reasoning from *Vara* that we applied to clerk-imposed fines likewise applies to the circuit clerk fees. We begin by observing that we have subject matter jurisdiction to review only final judgments entered by the circuit court (see Ill. Const. 1970, art. VI, § 6; *Vara*, 2018 IL 121823, ¶ 13) and that the final judgment in a criminal case is the sentence (*Vara*, 2018 IL 121823, ¶ 14). In the sentence the trial court imposed on defendant in this case, we find no mention of circuit clerk fees. Because the circuit clerk fees are not part of the final judgment, *i.e.*, the sentence, we lack subject-matter jurisdiction to review them. See *id.* ¶ 23.

¶ 55 F. Restitution

¶ 56 If the defendant's criminal act caused a person to receive "any *** damage to his or her real or personal property," the trial court must order restitution. 730 ILCS 5/5-5-6 (West 2012). The restitution must be in the amount of "the *actual* out-of-pocket expenses, losses, damages, and injuries suffered by the victim." (Emphasis added.) *Id.* § 5-5-6(b). "In no event shall the victim be entitled to recover restitution in excess of the actual out-of-pocket expenses, losses, damages, or injuries, proximately caused by the conduct of all of the defendants." *Id.* § 5-5-6(c)(1).

¶ 57 In determining the amount of restitution, the trial court may rely on the uncontested facts in the presentence investigation report. *People v. Gallinger*, 252 Ill. App. 3d 816, 820 (1993). According to the presentence investigation report in this case, the victims of the

residential burglary, Edgar and Carolyn Morris, suffered a loss of $42,529. This amount of loss was uncontested, and in defendant's sentencing hearing, the trial court ordered that he and his codefendants were jointly and severally liable for $42,529 in restitution to the Morrises. The court, however, reduced defendant's restitutionary obligation by a total of $21,382, consisting of the following items: $15,000 in restitution that Houle had paid, $1275 from Creech's bond, $953 from Shawn Morris's bond, $1654 in currency and coins seized from defendant after his arrest, and defendant's bond of $2500. Thus, the net amount of restitution that defendant owed was $21,147 ($42,529 minus $21,382 equals $21,147). The circuit clerk, however, in a certified printout dated January 16, 2018, claimed that defendant still owed the full $42,529 in restitution. Defendant argues, and the State concedes, that the correct amount of restitution is $21,147 and that the record should be amended accordingly.

¶ 58       The trouble is, this argument against the circuit clerk's calculation of the net restitutionary obligation is not an argument against the trial court's judgment, any more than the arguments against the clerk-imposed fines and fees are arguments against the judgment. It was not the trial court's judgment that defendant should pay a court finance assessment of $100, a violent crime victims fund assessment of $200, a medical cost assessment of $20, and an extra circuit clerk fee of $80. Nor was it the trial court's judgment that he presently owed the full $42,529 in restitution. These things of which defendant complains are all clerical departures from the trial court's judgment. *Cf. Vara*, 2018 IL 121823, ¶ 20 ("Thus, this case presents the anomalous circumstance in which a defendant has filed an appeal seeking to *uphold* the judgment entered by the circuit court." (Emphasis in original.)). Under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), we have "jurisdiction to review final judgments entered by the circuit court." *Vara*, 2018 IL 121823, ¶ 13. The final judgment was the

sentence of September 22, 2014. See *id.* ¶ 14. The circuit clerk's printout of January 16, 2018, was not the judgment, and, thus, we lack subject-matter jurisdiction to review it. See *id.* ¶ 23.

¶ 59                                     III. CONCLUSION

¶ 60          For the foregoing reasons, we affirm the trial court's judgment, and we assess $75 in costs against defendant.

¶ 61          Affirmed.