NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 221014-U

NO. 4-22-1014

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 25, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| TORLANDO DONTAE McDONALD, | ) | No. 20CF585 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Doherty and Lannerd concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed defendant's conviction of aggravated battery where
defendant failed to demonstrate that second-prong plain error occurred at his trial.

¶ 2     A Peoria County jury found defendant, Torlando Dontae McDonald, guilty of

aggravated battery (720 ILCS 5/12-3.05(d)(6) (West 2020)). The trial court sentenced defendant

to 10 years in prison. Defendant appeals, arguing that the court committed second-prong plain

error by (1) failing to appoint a special prosecutor *sua sponte*, (2) relieving the State of its burden

to prove all elements of the charged offense beyond a reasonable doubt, and (3) incorrectly

instructing the jury regarding the elements of the offense. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4     The State charged defendant with the aggravated battery of Assistant State's

Attorney Brian FitzSimons. See 720 ILCS 5/12-3.05(d)(6) (West 2020) (providing that a person

commits aggravated battery by battering someone he or she knows is "[a]n officer or employee of *** a unit of local government ***, while performing his or her official duties"). The indictment alleged that on September 22, 2020, defendant punched FitzSimons in the head, knowing that FitzSimons was an "assistant state's attorney while engaged in the performance of his official duties in Peoria County Circuit Court."

¶ 5        A different Peoria County assistant state's attorney prosecuted this aggravated battery case. Defendant elected to represent himself. Defendant never argued that the prosecutor had a conflict of interest based on his professional association with FitzSimons.

¶ 6        The matter proceeded to a jury trial. Defendant declined to present an opening statement. FitzSimons testified as follows about the events of September 22, 2020. On that day, "in performance of [his] official duties" as an assistant state's attorney, he was prosecuting a jury trial against defendant, who was representing himself. After the trial court sustained some of FitzSimons's objections to defendant's questioning of a witness, defendant hit FitzSimons on the side of the head, knocking him off his chair. FitzSimons then went to the hospital.

¶ 7        FitzSimons authenticated a video, without accompanying audio, depicting the incident. The video shows defendant standing at a podium in a crowded courtroom several feet away from FitzSimons, who is seated at a desk. Defendant abruptly punches FitzSimons on the side of his head, knocking him off his chair. Defendant then stomps on FitzSimons. Multiple security guards take defendant to the ground.

¶ 8        DaShaune Paul, a court security officer who helped restrain defendant after the incident, testified similarly to FitzSimons. Defendant did not cross-examine either FitzSimons or Paul.

- 2 -

¶ 9        The prosecutor concluded his case-in-chief by requesting as follows: "I would ask the Court to take judicial notice of its own file in 11-CF-1198, People of the State of Illinois vs. Torlando McDonald, indicating that on September 21st I believe a jury trial was commenced in that proceeding that was ongoing on September 22, 2020." The trial court responded, "So noted." Defendant presented no evidence.

¶ 10       Paragraph nine of Illinois Pattern Jury Instructions, Criminal, No. 1.01 (approved Apr. 30, 2021) (hereinafter IPI Criminal No. 1.01), provides: "The evidence which you should consider consists only of the testimony of the witnesses [and (the exhibits) (and) (stipulations) (and) (judicially noticed facts)] which the court has received. [You may, but are not required to, accept as conclusive any fact judicially noticed.]" The committee notes to this instruction indicate that a court should use the applicable paragraphs and bracketed material. The second sentence of paragraph nine of this instruction pertaining to judicially noticed facts coincides with Illinois Rule of Evidence Rule 201(g) (eff. Jan. 1, 2011), which states that "[i]n a criminal case, the court shall inform the jury that it may, but is not required to, accept as conclusive any fact judicially noticed."

¶ 11       Even though the trial court took judicial notice of the case file in case No. 11-CF-1198, the State tendered as State's Instruction No. 2 a version of IPI Criminal No. 1.01 that omitted reference to judicially noticed facts. Specifically, the relevant portion of State's Instruction No. 2 stated, "The evidence which you should consider consists only of the testimony of the witnesses and the exhibits which the court has received." At the jury instruction conference, defendant said he had "[n]o objection" to State's Instruction No. 2. Defendant tendered no jury instructions of his own. Consequently, the court never instructed the jury that it was not required to accept as conclusive any fact judicially noticed.

¶ 12       The State also tendered State's Instruction No. 10, which provided:

"A person commits the offense of Aggravated Battery when he knowingly and by any means makes physical contact of an insulting or provoking nature with another person, and in doing so, he knows the individual harmed to be an Assistant State's Attorney *whom he intended to harm as a result of the Assistant State's Attorneys* [*sic*] *performance of his official duties as an Assistant State's Attorney*." (Emphasis added.)

State's Instruction No. 10 referenced Illinois Pattern Jury Instructions, Criminal, No. 11.15 (approved Apr. 26, 2016) (hereinafter IPI Criminal No. 11.15).

¶ 13         The State further tendered State's Instruction No. 11, which provided, in relevant portion:

"To sustain the charge of Aggravated Battery, the State must prove the following propositions:

First Proposition: That the defendant knowingly made physical contact of an insulting or provoking nature with Brian FitzSimons; and

Second Proposition: That the defendant knew Brian FitzSimons to be an Assistant State's Attorney *whom he intended to harm as a result of the Assistant State's Attorney's performance of his or her official duties as an Assistant State's Attorney*." (Emphasis added.)

State's Instruction No. 11 referenced Illinois Pattern Jury Instructions, Criminal, No. 11.16 (approved Apr. 26, 2016) (hereinafter IPI Criminal No. 11.16).

¶ 14         Neither IPI Criminal No. 11.15 nor IPI Criminal No. 11.16 contain language specific to battering an assistant state's attorney. It seems the State used language from those two IPI instructions referencing battering a *judge* and then substituted "assistant state's attorney" for

- 4 -

"judge." Moreover, the committee notes for both IPI Criminal Nos. 11.15 and 11.16 indicate these instructions should *not* be used for offenses committed after July 1, 2011. Rather than modifying outdated pattern instructions without notifying the trial court it was doing so, the State should have submitted instructions based on Illinois Pattern Jury Instructions, Criminal, No. 11.113 (approved Apr. 13, 2016) and Illinois Pattern Jury Instructions, Criminal, No. 11.114 (approved Apr. 13, 2016), which are tailored to the subsection of the current version of the aggravated battery statute the State alleged defendant violated. Despite these irregularities, at the instructions conference, defendant said he had "[n]o objection" to State's Instructions Nos. 10 and 11. The court provided these instructions to the jury. Defendant did not present a closing argument.

¶ 15        During deliberations, the jury sent a question: "Can you provide a copy of the case in progress have the names identified [*sic*]? Sept. 22, 2020." The parties and the trial court discussed how to respond to this question. The prosecutor said it would be "highly prejudicial" to defendant for the jury to learn the nature of the offense involved in case No. 11-CF-1198. (Defendant was charged in that case with sex offenses against a 12-year-old girl. See *People v. McDonald*, 2016 IL App (3d) 140118-U, ¶¶ 4, 47, 51 (reversing defendant's convictions in case No. 11-CF-1198 and remanding for a new trial based on trial error).) Defendant objected to informing the jury about the identities of the witnesses in case No. 11-CF-1198. Defendant also expressed concern that jurors might use their phones during deliberations to search for information about case No. 11-CF-1198. The court assured defendant that would not happen. The prosecutor ultimately proposed telling the jury that Torlando McDonald was the defendant in case No. 11-CF-1198 and that FitzSimons was the assistant state's attorney. Defendant said he would "agree with the State" to give the jury that information, though he did not want the witnesses in case No. 11-CF-1198 identified. The court explained to defendant that "we wouldn't do that." The court

- 5 -

ultimately answered the jury's question as follows: "In that case on September 22, 2020, the Defendant was Torlando MacDonald [*sic*] and the Assistant State's Attorney was Brian FitzSimons."

¶ 16          The jury found defendant guilty of aggravated battery. The trial court sentenced defendant to 10 years in prison. Defendant filed a timely notice of appeal, which we later allowed him to amend.

¶ 17                                    II. ANALYSIS

¶ 18                                 A. Special Prosecutor

¶ 19          On appeal, defendant first argues that a special prosecutor should have been appointed, as the complainant and key witness in this case, FitzSimons, was the prosecutor's colleague. Defendant contends both that the prosecutor had an actual conflict of interest and that there was an appearance of impropriety in him prosecuting the matter. Although defendant acknowledges he never requested the appointment of a special prosecutor, he argues that the trial court's failure to appoint one *sua sponte* constituted second-prong plain error.

¶ 20          The State recognizes that trial courts have statutory authority to appoint a special prosecutor *sua sponte*. The State also concedes that the caselaw defendant cites establishes that "an actual conflict of interest *can* exist in the present circumstances." (Emphasis in original.) However, the State maintains that "the fact that an actual conflict *can* exist does not mean it always does." (Emphasis in original.) Moreover, according to the State, the trial court had no duty to consider *sua sponte* whether to appoint a special prosecutor. The State contends that defendant failed to meet his burden under the plain-error doctrine.

¶ 21          "To preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion." *People v. Sebby*, 2017 IL

119445, ¶ 48. If a defendant fails to do either of those things, he or she forfeits the right to argue that issue on appeal. *Sebby*, 2017 IL 119445, ¶ 48. The plain-error doctrine is a "narrow exception to forfeiture principles designed to protect the defendant's rights and the reputation of the judicial process." *People v. Moon*, 2022 IL 125959, ¶ 21. A defendant invoking the plain-error doctrine bears the burden of persuasion to demonstrate that a clear or obvious error occurred and that either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant" or (2) "the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Moon*, 2022 IL 125959, ¶ 20.

¶ 22        "The first analytical step under the plain error rule is to determine whether there was a clear or obvious error." *Moon*, 2022 IL 125959, ¶ 22. Not all errors, even ones that might demand reversal had the argument been preserved, constitute clear or obvious errors for purposes of the plain-error doctrine. *People v. Hammons*, 2018 IL App (4th) 160385, ¶ 17. Rather, an error is clear or obvious when it is "manifest or patent." *Hammons*, 2018 IL App (4th) 160385, ¶ 17. It is not enough that the defendant identifies "arguable issues that could have been raised in the trial court." *Hammons*, 2018 IL App (4th) 160385, ¶ 17.

¶ 23        If a clear or obvious error occurred, the next analytical step depends on which prong of the plain-error doctrine the defendant invokes. *People v. Jackson*, 2022 IL 127256, ¶ 23. Here, defendant invokes only the second prong, which focuses on the seriousness of the error, not on the strength of the State's evidence. *Jackson*, 2022 IL 127256, ¶ 24. The rationale for the second prong of the plain-error doctrine is that some errors are presumptively prejudicial because they are so grave as to threaten the integrity of the judicial process. *Jackson*, 2022 IL 127256, ¶ 24.

¶ 24        It is rare for an error to meet that standard, as the second prong is limited to structural errors. *Jackson*, 2022 IL 127256, ¶¶ 27-28. Structural errors under federal law include

"a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction." *Jackson*, 2022 IL 127256, ¶ 29. Illinois courts may recognize additional categories of structural errors, so long as they are similar to the ones recognized under federal law. *Jackson*, 2022 IL 127256, ¶ 30. To constitute a structural error, an error must be "of such magnitude that it undermines the framework within which the trial proceeds, rather than a mere error in the trial process itself." *Jackson*, 2022 IL 127256, ¶ 31.

¶ 25 Section 3-9008 of the Counties Code (55 ILCS 5/3-9008 (West 2022)) addresses the appointment of special prosecutors. Subsection 3-9008(a-10) provides as follows:

> "*The court on its own motion*, or an interested person in a cause, proceeding, or other matter arising under the State's Attorney's duties, civil or criminal, *may file a petition alleging that the State's Attorney has an actual conflict of interest in the cause, proceeding, or other matter*. The court shall consider the petition, any documents filed in response, and if necessary, grant a hearing to determine whether the State's Attorney has an actual conflict of interest in the cause, proceeding, or other matter. If the court finds that the petitioner has proven by sufficient facts and evidence that the State's Attorney has an actual conflict of interest in a specific case, the court may appoint some competent attorney to prosecute or defend the cause, proceeding, or other matter." (Emphases added.) 55 ILCS 5/3-9008(a-10) (West 2022).

"The decision whether to appoint a special prosecutor under section 3-9008 rests within the discretion of the trial court." *People v. Bickerstaff*, 403 Ill. App. 3d 347, 352 (2010). Thus, where a court denies a defendant's request for a special prosecutor, the reviewing court will reverse only

for an abuse of discretion. See *Bickerstaff*, 403 Ill. App. 3d 354. "The threshold for finding an abuse of discretion is high—an abuse of discretion will be found only if no reasonable person would take the view adopted by the trial court." *People v. Max*, 2012 IL App (3d) 110385, ¶ 59.

¶ 26 As noted, the statute says a trial court "may" *sua sponte* raise the issue of appointing a special prosecutor. 55 ILCS 5/3-9008(a-10) (West 2022). Here, defendant argues the circumstances *required* the court to appoint a special prosecutor *sua sponte*. Defendant further proposes that the failure to do so is one of the rare types of errors implicating the second prong of the plain-error doctrine.

¶ 27 We hold that defendant has failed to show the trial court committed a clear or obvious error. Defendant cites no case holding that a court has a duty to appoint a special prosecutor *sua sponte*. Two of the cases defendant cites involved challenges on appeal to orders denying defendants' motions for a special prosecutor. *Bickerstaff*, 403 Ill. App. 3d at 350, 352; *People v. Lang*, 346 Ill. App. 3d 677, 678 (2004). In a third case defendant cites, a party to an administrative disciplinary action argued before the administrative tribunal that a conflict of interest prevented the state's attorney's office from representing the complainant, yet the tribunal took no action on that motion. *Sommer v. Goetze*, 102 Ill. App. 3d 117, 118 (1981). Of these three cases, only *Lang* mentioned the plain-error doctrine (the defendant's argument in *Lang* was not fully preserved, as the defendant had not argued in his posttrial motion that the trial court erroneously denied the motion for a special prosecutor). *Lang*, 346 Ill. App. 3d at 680. Despite purporting to overlook the defendant's forfeiture pursuant to the plain-error doctrine, the appellate court in *Lang* still reviewed the trial court's ruling on the motion for an abuse of discretion. *Lang*, 346 Ill. App. 3d at 680, 686. Here, unlike any of the cases defendant cites, defendant never moved

for a special prosecutor. Thus, these cases do not demonstrate that the court committed a clear or obvious error by refusing to appoint a special prosecutor *sua sponte*.

¶ 28     Nevertheless, defendant submits that his case is "factually similar to *Lang*." In *Lang*, Lake County Assistant State's Attorney Daniel Kleinhubert surreptitiously followed the defendant into a parking garage after a hearing and then notified the police that he saw the defendant drive with a revoked license. *Lang*, 346 Ill. App. 3d at 678-79. The defendant moved for a special prosecutor on the new charge of driving with a revoked license. *Lang*, 346 Ill. App. 3d at 679. The trial court denied that motion but ruled that Kleinhubert could not prosecute the case. *Lang*, 346 Ill. App. 3d at 679. Despite that ruling, Kleinhubert appeared for the State in court 23 more times, without objection from the defense. *Lang*, 346 Ill. App. 3d at 679-80. Although a different assistant state's attorney from the same office conducted defendant's trial, Kleinhubert was "the sole witness at the trial to testify as to observing the defendant commit" a crime. *Lang*, 346 Ill. App. 3d at 679.

¶ 29     The appellate court held that the trial court abused its discretion by denying the defendant's motion for a special prosecutor, as the circumstances created an appearance of impropriety. *Lang*, 346 Ill. App. 3d at 684, 686. The court reasoned, in part, that Kleinhubert's "aggressive behavior toward the defendant created the appearance that the State's Attorney's office was obsessed with finding evidence against the defendant to obtain a conviction against him at all costs." *Lang*, 346 Ill. App. 3d at 684. The court recognized that "in some circumstances, it may not be improper for an assistant State's Attorney to testify as a witness in a case that his office is prosecuting." *Lang*, 346 Ill. App. 3d at 685. However, the court believed it was "a rare case in which an assistant State's Attorney will surreptitiously follow a defendant and then become the key witness against him at trial." *Lang*, 346 Ill. App. 3d at 685. Under the "specific facts of this

case," the court held that "the trial court abused its discretion in not appointing a disinterested attorney, one from outside the Lake County State's Attorney's office, to prosecute the defendant." *Lang*, 346 Ill. App. 3d at 685-86.

¶ 30　　　　*Lang* is not factually analogous. Here, prosecutors did not surreptitiously follow defendant to catch him committing a criminal offense. Thus, there is no concern about a prosecutor being overzealous. Furthermore, unlike *Lang*, FitzSimons was not the only witness to defendant's criminal offense. Paul, the court security officer, testified that he restrained defendant after defendant attacked FitzSimons. The attack was also videorecorded.

¶ 31　　　　We hold that defendant has not met his burden to show the trial court committed a clear or obvious error by failing to appoint a special prosecutor *sua sponte*. Accordingly, defendant has not demonstrated his entitlement to relief under the plain-error doctrine.

¶ 32　　　　　　　　B. Removal of Elements From the Jury's Consideration

¶ 33　　　　Defendant next argues that the trial court committed second-prong plain error by relieving the State of its burden to prove all elements of the charged offense beyond a reasonable doubt. Defendant notes the State had to prove that he battered FitzSimons and knew that FitzSimons was "[a]n officer or employee of *** a unit of local government ***, while performing his or her official duties." 720 ILCS 5/12-3.05(d)(6) (West 2020). Defendant reasons that by (1) taking judicial notice of the court file in case No. 11-CF-1198, (2) failing to inform the jury that it was not required to accept as conclusive any fact judicially noticed, and (3) responding to the jury's question by asserting that FitzSimons was the assistant state's attorney in case No. 11-CF-1198, the court created an unconstitutional mandatory presumption that FitzSimons was an officer or employee of a unit of local government who was performing his official duties when defendant battered him.

¶ 34   The State responds that there was no risk the jury incorrectly convicted defendant or failed to understand the law. The State submits that FitzSimons's testimony and the video "irrefutably established" the elements of the charged offense. The State further argues that defendant may not challenge the trial court's answer to the jury's question, as defendant acquiesced to that answer.

¶ 35   In his reply brief, defendant asks us not to deem any portion of his argument barred by affirmative acquiesce, because (1) his trial violated basic "tenets of the American criminal justice system" and (2) the lack of a judicial-notice instruction "ultimately led to the jury question." Defendant further contends that if affirmative acquiescence bars him from challenging the trial court's specific response to the jury's question, he should still be allowed to argue that the question deserved no response.

¶ 36   To address defendant's multifaceted challenge, we deem it necessary to narrow the issues by identifying exactly what the parties dispute. In its case-in-chief, the State submitted testimony and a video that overwhelmingly established each element of the charged offense. Defendant made no attempt to refute or discredit that evidence. Thus, defendant cannot, and does not, dispute the strength of the State's evidence against him.

¶ 37   At the conclusion of the State's case-in-chief, the prosecutor requested the trial court to "take judicial notice of its own file in 11-CF-1198, People of the State of Illinois vs. Torlando McDonald, indicating that on September 21st I believe a jury trial was commenced in that proceeding that was ongoing on September 22, 2020." Without requesting input from defendant, the court said: "So noted." Defendant does not argue that it was error in itself for the court to take judicial notice as requested by the State.

¶ 38        Illinois Rule of Evidence Rule 201(g) (eff. Jan. 1, 2011) says, "[i]n a criminal case, the court shall inform the jury that it may, but is not required to, accept as conclusive any fact judicially noticed." The instruction required by Rule 201(g) may be given as part of paragraph nine of IPI Criminal No. 1.01. Here, from the prosecutor's exchange with the trial court, it seems the court took judicial notice, at least implicitly, of the following facts: (1) case No. 11-CF-1198 existed, (2) it was a criminal case, (3) Torlando McDonald was the defendant, (4) that case proceeded to a jury trial on September 21, 2020, and (5) the proceeding was ongoing the next day. However, the jury never received the instruction required by Rule 201(g). Thus, a clear or obvious error occurred. The State does not seem to dispute that.

¶ 39        A trial court may take judicial notice of a fact even if it is an element of the charged offense. *People v. Messenger*, 2015 IL App (3d) 130581, ¶ 29. Here, defendant asserts that the judicially noticed facts "went to an element of the offense, namely that FitzSimons was performing his official duties at the time of the battery." However, the judicially noticed facts mentioned neither FitzSimons nor a battery. Thus, the trial court did not directly take judicial notice of facts constituting any element of the offense.

¶ 40        During deliberations, the jury sent a question: "Can you provide a copy of the case in progress have the names identified [*sic*]? Sept. 22, 2020." With the parties' agreement, the trial court ultimately answered, "In that case on September 22, 2020, the Defendant was Torlando MacDonald [*sic*] and the Assistant State's Attorney was Brian FitzSimons."

¶ 41        On appeal, defendant contends both that the jury's question deserved no response and that the given response improperly relieved the State of its burden of proof. However, as the State correctly notes, where a defendant affirmatively acquiesces to a court's response to a jury question, that defendant may not invoke the plain-error doctrine to challenge the response on

appeal. See *People v. Baker*, 2022 IL App (4th) 210713, ¶ 61. Here, when the jury submitted its question, defendant expressed concerns that the jury should not learn the names of the witnesses in case No. 11-CF-1198 and should not be allowed to conduct independent investigations regarding that case. The prosecutor then proposed telling the jury only that Torlando McDonald was the defendant in case No. 11-CF-1198 and that FitzSimons was the assistant state's attorney. Defendant said he would "agree with the State" to give the jury that information. The trial court ultimately responded to the jury's question by providing only the agreed-upon information. Accordingly, defendant affirmatively acquiesced to the response and may not rely on matters relating to answering the jury's question as reasons for reversing the judgment. See *Baker*, 2022 IL App (4th) 210713, ¶ 63 (holding that a defendant could not argue plain error in connection with a response to a jury question where defense counsel and the prosecutor proposed giving similar responses and the parties then agreed that the court's proposed response, which was in line with the parties' suggestions, was acceptable); *People v. Pryor*, 372 Ill. App. 3d 422, 431-32 (2007) (finding affirmative acquiescence under similar circumstances).

¶ 42    Accordingly, the question for us to resolve boils down to the following: did the clear or obvious error in failing to instruct the jury that it was not required to accept as conclusive any fact judicially noticed rise to the level of second-prong plain error? Again, to constitute second-prong plain error, a clear or obvious error must be "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Moon*, 2022 IL 125959, ¶ 20. Such error must be structural in nature, affecting "the framework within which the trial proceeds," rather than being a mere "error[ ] in the trial process itself." *Moon*, 2022 IL 125959, ¶ 29. A structural error is rare and demands reversal regardless of whether the defendant shows he or she was prejudiced by the error. *Jackson*, 2022 IL 127256, ¶¶ 27-28.

¶ 43    In *Messenger*, which involved a preserved challenge rather than a plain-error argument, the appellate court explained that a violation of Illinois Rule of Evidence Rule 201(g) essentially amounts to an *Apprendi* violation and is subject to harmless-error review. *Messenger*, 2015 IL App (3d) 130581, ¶¶ 41-42; see *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *People v. Love*, 2013 IL App (3d) 120113, ¶¶ 27-29 (applying harmless-error review to a preserved challenge regarding a Rule 201(g) violation). An instructional error of this nature is not structural error commanding automatic reversal. *Messenger*, 2015 IL App (3d) 130581, ¶¶ 43-44, 46. This stands to reason. Were it otherwise, a new trial would be required whenever a court takes judicial notice of any fact, however inconsequential to the disputed issues in the case, and then fails to inform the jury that it need not accept that fact as conclusive. A Rule 201(g) violation is more like an "error in the trial process itself" than a structural error affecting "the framework within which the trial proceeds." *Moon*, 2022 IL 125959, ¶ 29.

¶ 44    Nevertheless, defendant maintains that the confluence of circumstances here violated his general right to a jury trial. However, the cases he cites are distinguishable. For example, defendant relies on cases declaring statutes unconstitutional because they expressly directed fact finders to draw specified legal conclusions if certain facts existed. See *People v. Jordan*, 218 Ill. 2d 255, 258, 266 (2006) (holding that a portion of the child-endangerment statute was unconstitutional because it created a mandatory presumption of endangerment for leaving a child under six years old in an unattended motor vehicle for more than 10 minutes); *People v. Pomykala*, 203 Ill. 2d 198, 202, 209 (2003) (holding that a portion of the reckless-homicide statute was unconstitutional because it created a mandatory presumption that a person committed a

- 15 -

reckless act if he or she drove under the influence of alcohol); *People v. Watts*, 181 Ill. 2d 133, 140-41, 149 (1998) (holding that a provision in the Home Repair Fraud Act was unconstitutional because it created a mandatory presumption that, if certain facts existed, then a contractor made promises with the intent not to perform the work or with knowledge that the work would not be performed). Part of the problem with mandatory presumptions is that they "could, in effect, require a trial judge 'to direct a verdict against the defendant on the element which is proved by the use of the presumption.' " *Jordan*, 218 Ill. 2d at 266 (quoting *Watts*, 181 Ill. 2d at 147). But the appellate court has determined that judicially noticing a fact without giving a proper instruction pursuant to Illinois Rule of Evidence Rule 201(g) is not necessarily "akin to an unconstitutional directed verdict." *Messenger*, 2015 IL App (3d) 130581, ¶ 41. Unlike in *Jordan*, *Pomykala*, and *Watts*, the jury here was never told that it should presume the State proved any element of its case if certain facts existed. Therefore, there is no presumption at issue here, let alone an unconstitutional mandatory one.

¶ 45          Defendant also cites *United States v. Mentz*, 840 F.2d 315 (6th Cir. 1988), and *United States v. Gaudin*, 515 U.S. 506 (1995). In *Mentz*, the federal circuit court of appeals held that in a prosecution for bank robbery, the district court erred by (1) instructing the jury that the subject banks were insured by the Federal Deposit Insurance Corporation at the time of the offenses and (2) failing to instruct the jury that the prosecution was required to prove that element beyond a reasonable doubt). *Mentz*, 840 F.2d at 318-19, 321, 324. In *Gaudin*, the Supreme Court held that in a prosecution for making materially false statements in a matter within the jurisdiction of a federal agency, the district court erroneously instructed the jury that the question of materiality was a matter for the court to decide. *Gaudin*, 515 U.S. at 507-08, 523. *Mentz* and *Gaudin* are

distinguishable, as the trial court here never directed the jury not to consider whether the State proved an element of the charged offense.

¶ 46    For these reasons, we hold that defendant has not met his burden to show the trial court committed a structural error falling within the scope of the second prong of the plain-error doctrine.

¶ 47                              C. Elements Instructions

¶ 48    Defendant further argues the trial court committed second-prong plain error by erroneously instructing the jury regarding the elements of aggravated battery. Defendant notes that the statute required the State to prove, *inter alia*, that FitzSimons was "[a]n officer or employee of *** a unit of local government ***, *while* performing his or her official duties." (Emphasis added.) 720 ILCS 5/12-3.05(d)(6) (West 2020). However, State's Instructions Nos. 10 and 11 informed the jury that the State must prove, *inter alia*, that defendant knew FitzSimons was an assistant state's attorney and that defendant "intended to harm" FitzSimons "as a result of" FitzSimons's performance of his official duties. According to defendant, the instructions "omitted the element of *while* and substituted it with an element of *because*." (Emphasis in original.) Thus, defendant proposes that the jury was not informed of the essential characteristics of the charged offense.

¶ 49    The State recognizes that State's Instructions Nos. 10 and 11 differed from the statutory language and "might have caused an arguable ambiguity regarding the temporal requirement of the offense." However, the State emphasizes that defendant may not obtain a new trial pursuant to the plain-error doctrine unless the instructions created " 'a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial' " (quoting *People v. Hopp*, 209 Ill. 2d 1, 8 (2004)).

The State argues there was no risk that defendant was incorrectly convicted, as the "overwhelming evidence unequivocally satisfied the essential characteristics of the offense."

¶ 50 In his reply brief, defendant maintains there was no ambiguity in the jury instructions. Rather, he argues, "[t]he jury here was instructed as to something that does not constitute an aggravated battery, meaning it could not have possibly understand [*sic*] the applicable law." Defendant asserts that "[j]ust because a defendant batters a government employee 'as a result of' the government employee performing his duties does not mean the battery occurred while he performed his duties." Apparently addressing the State's point about the overwhelming nature of the evidence, defendant contends that the instructions deprived the jury of the opportunity to determine whether the battery occurred while FitzSimons was performing his official duties.

¶ 51 Defendant failed to raise these matters below, and he told the trial court he had "[n]o objection" to State's Instructions Nos. 10 and 11. We note the State does not argue that defendant's acquiescence to these instructions precludes plain-error review. We will proceed with the plain-error analysis.

¶ 52 The prosecutor submitted two outdated and modified pattern jury instructions that did not precisely track the language of the statute the State alleged defendant violated. The prosecutor also never informed the trial court—or, as far as the record shows, defendant—that the instructions were modified. We deem this a clear or obvious error. See *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 85 (determining that a trial court erred by giving instructions based on an outdated version of the armed robbery statute). It is evident the prosecutor failed to read the committee notes to IPI Criminal Nos. 11.15 and 11.16, as the notes would have directed him to the proper pattern instructions. It is also disturbing that the prosecutor, an officer of the court, represented to the court that outdated modified instructions were current pattern instructions.

¶ 53        The question, then, is whether this clear or obvious instructional error constitutes structural error entitling defendant to a new trial. Under federal law, neither failing to instruct a jury regarding an element of the offense nor misstating an element of the offense constitutes structural error. See *Neder v. United States*, 527 U.S. 1, 8 (1999) ("The error at issue here—a jury instruction that omits an element of the offense—differs markedly from the constitutional violations we have found to defy harmless-error review."); *Pope v. Illinois*, 481 U.S. 497, 503-04 (1987) (remanding the matter to the Illinois Appellate Court for a determination of whether it was harmless error for a trial court to instruct a jury with an improper standard for gauging obscenity).

¶ 54        Nevertheless, the Illinois Supreme Court has determined that erroneous jury instructions may, in some instances, implicate the second prong of the plain-error doctrine. Specifically, "[t]he erroneous omission of a jury instruction rises to the level of plain error only when the omission creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *People v. Sargent*, 239 Ill. 2d 166, 191 (2010). The appellate court has applied this same standard in cases where jury instructions misstated rather than omitted an element of the offense. See *Mister*, 2016 IL App (4th) 130180-B, ¶ 89; *People v. Watt*, 2013 IL App (2d) 120183, ¶ 39. Obtaining reversal for an unpreserved instructional error is a "difficult" standard to meet, as "[e]ven an incorrect instruction on an element of the offense is not necessarily reversible error." *Sargent*, 239 Ill. 2d at 191. In determining whether the plain-error doctrine applies, the reviewing court should consider the effect of the instructional error on the defendant's trial. *Hopp*, 209 Ill. 2d at 10. For example, we may consider whether the error went to an "essential disputed issue" in the case. *Hopp*, 209 Ill. 2d at 14; see *People v. Ogunsola*, 87 Ill. 2d 216, 223 (1981) (holding that it was plain error not to instruct the jury that the State must prove the defendant intended to defraud the

victim, as "[t]he principal contested issue relevant to defendant's culpability was whether he had the intent to defraud").

¶ 55        Thus, to establish second-prong plain error, it is not enough for a defendant to demonstrate that the jury was instructed incorrectly as to the elements. Here, defendant skips from point A (his jury was instructed incorrectly) to point C (second-prong plain error occurred) without establishing point B—*i.e.*, articulating concrete reasons, specific to the facts of this case, why the jury's misunderstanding of the law created a serious risk that he was convicted incorrectly.

¶ 56        Hypothetically, a jury given State's Instructions Nos. 10 and 11 could return a guilty verdict for aggravated battery even if the jury believed the victim was not performing his or her official duties as an assistant state's attorney at the time of the battery. That would be improper, as the statute requires the battery to occur "while" the assistant state's attorney performs his or her official duties. 720 ILCS 5/12-3.05(d)(6) (West 2020). For example, it would not meet the temporal requirement of the statute if, upon a chance encounter around town, a person battered the assistant state's attorney who had procured his or her conviction years earlier. We can envision scenarios where the temporal link could be an essential disputed issue at trial. We can also imagine situations where it would make a difference whether a battery occurred "while" an assistant state's attorney performed his or her official duties rather than "as a result of" the performance of duties. However, whether plain error occurred depends on the reality of the given case, not speculation about what theoretically could have happened under different facts. See *Hopp*, 209 Ill. 2d at 17 ("Speculation about what the jury may have thought is insufficient to show that the omission of the instruction defining first degree murder severely threatened the fairness of defendant's trial and that it was plain error.").

¶ 57 Here, the temporal link between the battery and FitzSimons's performance of official duties as an assistant state's attorney was not a disputed issue at trial. The uncontradicted testimony and video evidence showed that defendant battered FitzSimons in open court during a previous criminal trial. It would be hard to imagine a more clear-cut example of a battery occurring while an assistant state's attorney performed his or her official duties. See *People v. Jones*, 81 Ill. 2d 1, 9 (1979) (although the trial court instructed the jury with the wrong mental state required for attempted murder, our supreme court held that the error did not require a new trial, as "the intent to commit murder was blatantly evident from the circumstances, *** even admitted by defense counsel"). Here, defendant declined opportunities to give an opening statement, to cross-examine the State's witnesses, to submit evidence, and to present a closing argument. Accordingly, there was no dispute that the battery occurred while FitzSimons was performing his official duties. Under these unique circumstances, we discern no risk, let alone a "serious" one (*Sargent*, 239 Ill. 2d at 191), that the jury incorrectly convicted defendant because they did not understand that the battery must have occurred while FitzSimons was performing his official duties.

¶ 58 Defendant analogizes his circumstances to *People v. Hale*, 2012 IL App (4th) 100949, and *People v. Fonder*, 2013 IL App (3d) 120178. In *Hale*, we reversed a defendant's conviction for threatening a public official where the trial court neglected to instruct the jury about the statutory standard for assessing whether the defendant made a threat. *Hale*, 2012 IL App (4th) 100949, ¶¶ 23-25. We reasoned that it was possible under the facts of the case that the jury improperly found the defendant guilty based on having made a "generalized threat" rather than the more specific type of threat required by statute. *Hale*, 2012 IL App (4th) 100949, ¶ 24. In *Fonder*, the appellate court reversed a conviction for resisting a peace officer causing injury where the trial court failed to instruct the jury regarding an element of the offense—whether the defendant

proximately caused injury to an officer. *Fonder*, 2013 IL App (3d) 120178, ¶ 26. The appellate court noted that the jury seemingly determined that the subject police officer suffered no injury, as the jury acquitted the defendant of a related aggravated battery charge. *Fonder*, 2013 IL App (3d) 120178, ¶ 26.

¶ 59       *Hale* and *Fonder* are both distinguishable. As explained above, the error in the jury instructions here did not go to an essential disputed issue in the case. There is no serious risk that the jury instructions' deviation from the statutory language had an effect on defendant's trial.

¶ 60                                   III. CONCLUSION

¶ 61       For the reasons stated, we affirm the trial court's judgment.

¶ 62       Affirmed.