No. 2-09-0586     Filed:  7-29-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lee County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07--CF--156 |
| CHARLES L. BICKERSTAFF, | ) ) | Honorable Stephen C. Pemberton, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Charles Bickerstaff, appeals from his conviction of 11 counts of criminal sexual assault.  On appeal, he argues that his conviction must be reversed because (1) the current Lee County State's Attorney's extrajudicial statements about the case deprived him of a fair trial, and (2) the trial court erred in denying his motion to appoint a special prosecutor in place of the State's Attorney's office.  For the reasons that follow, we affirm the judgment of the trial court.

Before his trial, defendant filed a motion for change of venue in October 2008 and a motion to disqualify the Lee County State's Attorney's office in February 2009.  Both motions were premised on what defendant alleged were improper extrajudicial statements about his case by Henry Dixon, who was a candidate for Lee County State's Attorney when the statements were made and was elected before defendant's trial began.  Defendant produced documentary evidence of Dixon's statements, whose authenticity the State did not contest.  All of the comments at issue pertained to

inculpatory evidence that had been found in a search of defendant's home but suppressed from evidence at defendant's trial. Defendant submitted a printout of a Web page, created by Dixon, to criticize his incumbent opponent, Paul Whitcombe. The printout contained the following commentary on the current case:

"In the pending case, People v Bickerstaff, 2007 CF 179, the trial judge ruled that certain critical evidence was not admissible because the search warrant failed to include [evidence of the same type].

The person who drafted the Complaint for Search Warrant and the Search Warrant just failed to include a broader list of items once [sic] would expect to find. He asked for DVDs, computer images, and magazines. He just as easily could have--and should have--included notebooks, handwritten journals, diaries, or written documents, but he failed to do so. A slipshod job of it.

See the accompanying Telegraph article. [The word 'article' appeared as a hyperlink, apparently to a newspaper article describing the trial court's ruling excluding the evidence.] The way Paul Whitcombe heaps praise on the sheriff's deputies, you would think Paul Whitcombe wants to divert scrutiny away from the important question.

Who do you suppose it was who failed to do a thorough job of drafting the Complaint and more importantly, the Search Warrant? No doubt it was out [sic] own State's Attorney."

The printout also included statistics detailing the percentage of Whitcombe's felony cases in which counts had been dismissed or reduced to misdemeanors or in which Whitcombe had obtained guilty pleas. Comments by the parties and the court on the record indicate that the Web page remained active even after Dixon's election and after defendant's motion to disqualify Dixon's office; those

same comments indicate that Dixon discontinued the Web page once defendant pointed out that it remained posted.

Defendant also submitted a printout of a newspaper article that reported on the Web page's contents and provided context for the comments by stating that "[d]efense attorneys recently won a major victory when a judge ordered a series of potentially damning journals tossed from the State's evidence because the search of Bickerstaff's home went beyond the scope of a search warrant Whitcombe drafted." The article did not, however, attribute that passage to Dixon.

Defendant also submitted a transcript of public comments Dixon made at a campaign appearance:

"I will thoughtfully draft correct and correctly draft court documents, such as search warrants, complaints for search warrants which will give the officers the latitude they need and they are entitled to have. Mr. Whitcombe doesn't. And I give you an example of People v. Bickerstaff 07 CF 179 in which the Telegraph reported that it was a botched search. Sheriff Varga you never should never [sic] have stood up and said nothing. Because it was not a botched search. Your cops did the right thing. It was a botched search warrant and Mr. Whitcombe drafted that warrant. These are acts of conduct that I just cannot tolerate."

Another newspaper article that defendant submitted reported defendant's request that his case be moved from Lee County. It quoted Dixon as saying that he " 'never said anything about Bickerstaff's guilt or innocence' " but only that " '[w]hen the state's attorney drew the search warrant, he didn't do it properly.' " The article included Whitcombe's reply that, in the reporter's words, Dixon's "election plank could make it impossible for Dixon to pick up prosecution of Bickerstaff if he wins." Dixon's quoted response to this argument was that he " 'just assumed [the litigants] would

have this case resolved. If they can't get it resolved in one and a half months, I'd have to consider what [Whitcombe] said.' "

A later newspaper article contained in the record, titled "Dixon blasts venue motion," stated that Dixon was accusing defendant's counsel of filing his motion to move the case from Lee County in order to politicize the case to help Whitcombe's reelection bid. In the article, Dixon was quoted as saying " 'I simply and directly asserted that it was incorrect to refer to the search in the Bickerstaff case as a "botched search." It was a botched search warrant.' " The article also attributed to Dixon the sentiment that "there's a difference between calling on Whitcombe to take responsibility for a warrant and calling the case botched." Defendant also noted to the trial court that he had originally been charged with 8 counts of sexual assault and abuse; after Dixon was elected, the State amended its charges to include a total of 24 counts of sexual assault and abuse.

In his motion for a change of venue, defendant argued that Dixon's statements commented on suppressed evidence, implied defendant's guilt, used defendant's name as "an object of scorn," and thus prejudiced the jury pool. In his later motion to disqualify Dixon's State's Attorney's office, defendant argued that Dixon had violated rules of professional conduct and created an appearance of impropriety by participating in defendant's case after using it as a political device to win election.

In December 2008, the trial court commented in open court that defendant had withdrawn his motion for a change of venue, and defendant did not disagree. The record contains no indication as to why defendant withdrew his motion. In February 2009, the trial court denied defendant's motion to disqualify Dixon's office; the court concluded that none of Dixon's comments demonstrated that Dixon had an inappropriate interest in defendant's case. The trial court further found that there was no evidence that the public perceived any conflict of interest on Dixon's part,

but the court added that, if "that becomes an issue in voir dire, [it] could revisit" its assessment of public awareness. In later pretrial proceedings, the parties and the trial court agreed to convene a larger-than-normal jury venire to avoid problems with pretrial publicity. Defendant also filed a written motion requesting that, due to pretrial publicity and the sensitive nature of the charges at issue, potential jurors be examined individually "in order to prevent the venire persons from hearing the questions being asked" of others. The record shows that the trial court granted defendant's request in part, by allowing separate examination of four potential jurors at a time. However, the record contains no transcript or other description of the voir dire proceedings.

At the conclusion of defendant's trial, the jury found him guilty of 22 charges of sexual assault and abuse, and the trial court sentenced him to a total of 80 years' imprisonment for the 11 sexual assault charges. Defendant timely appeals.

Defendant's first argument on appeal is that Dixon's extrajudicial statements prejudiced his ability to obtain a fair trial on the charges against him. See People v. Kirchner, 194 Ill. 2d 502, 528-29 (2000) ("Under both the United States and the Illinois Constitutions, a criminal defendant is entitled to a jury that is impartial, which means ' "a jury capable and willing to decide the case solely on the evidence before it." ' "), quoting People v. Olinger, 176 Ill. 2d 326, 353 (1997), quoting Smith v. Phillips, 455 U.S. 209, 217, 71 L. Ed. 2d 78, 86, 102 S. Ct. 940, 946 (1982). However, as the State notes in its brief, "a defendant represented by counsel of his choice cannot, after his conviction, complain of the effect that pretrial publicity may have had on the jury when he failed to move for a change of venue or continuance or to preserve the voir dire examination." People v. Hagel, 32 Ill. 2d 413, 415 (1965). This rule stands to reason. A reviewing court asked to evaluate the impartiality of a jury can do so only by examining the indications contained in the record, and those indications

will almost certainly come from evidence adduced in response to a motion for a change of venue or during voir dire. See, e.g., Kirchner, 194 Ill. 2d at 528-35 (evaluating the defendant's impartiality claim by reviewing voir dire questions and answers, and discussing cases in which reviewing courts examined evidence adduced at voir dire or in response to a motion for a change of venue). Defendant here did not pursue his motion for a change of venue, and the record on appeal does not include any substantial description of the voir dire proceedings. Further, even though the State argues forcefully in its brief that these problems dictate that defendant's lack-of-impartiality argument be rejected, defendant does not reply to the State's position. Thus, we are unable to evaluate the effect of pretrial publicity, or voir dire questioning, on defendant's jury, and we agree with the State that we must reject defendant's argument.

Defendant's second argument is that the trial court erred in denying his motion to disqualify Dixon's office from this case and instead appoint a special prosecutor. Section 3--9008 of the Counties Code allows a court to appoint an attorney to act on behalf of the State's Attorney "[w]henever the State's attorney is sick or absent, or unable to attend, or is interested in any cause or proceeding *** which it is or may be his duty to prosecute or defend." 55 ILCS 5/3--9008 (West 2008). This provision has been interpreted as providing the standard for determining when a State's Attorney should be removed from a case due to improper interest in a case. See People v. Lang, 346 Ill. App. 3d 677, 680-81 (2004). The decision whether to appoint a special prosecutor under section 3--9008 rests within the discretion of the trial court. Lang, 346 Ill. App. 3d at 681.

The parties agree that, under our case law, a prosecutor will be deemed "interested" under section 3--9008 in three situations: (1) where the attorney is interested as a private individual in the litigation, (2) where the attorney is an actual party to the litigation, and (3) where the attorney's

continued participation would create the appearance of impropriety in the prosecution of a defendant. Lang, 346 Ill. App. 3d at 681-82. Defendant argues that the third problem--the appearance of impropriety--is present here. In order to determine whether a State's Attorney's office should be removed in order to alleviate the appearance of impropriety, a court must weigh the concern about the appropriateness of the office's prosecuting the case against "countervailing considerations" that include "(1) the burden that would be placed on the prosecutor's office if the entire prosecutor's office had to be disqualified; (2) how remote the connection is between the State's Attorney's office and the alleged conflict of interest; and (3) to what extent the public is aware of the alleged conflict of interest." Lang, 346 Ill. App. 3d at 683.

Defendant bases his argument regarding Dixon's disqualification on the assertion that Dixon violated Rules 3.6 and 3.8 of the Illinois Rules of Professional Conduct. Rule 3.6 prohibits "[a] lawyer who is participating or has participated" in a case from making a public "extrajudicial statement *** if the lawyer knows or reasonably should know that it would pose a serious and imminent threat to the fairness of an adjudicative proceeding." 188 Ill. 2d R. 3.6. Among the types of comments the rule identifies specifically as threatening the fairness of a trial are comments in a criminal case relaying "the existence or contents of any confession, admission, or statement given by a defendant." 188 Ill. 2d R. 3.6(b)(2). Rule 3.8(a), as relevant here, states that "[t]he duty of a public prosecutor *** is to seek justice, not merely to convict," and that a prosecutor "shall refrain from making extrajudicial comments that would pose a serious and imminent threat of heightening public condemnation of the accused." 188 Ill. 2d R. 3.8(a).

In response to defendant's citation to the Rules of Professional Conduct, the State notes, correctly, that the central question for us is not whether Dixon violated an ethical rule; such

disciplinary matters are not within this court's purview. Instead, the central question for us is whether the trial court abused its discretion in determining that Dixon's conduct did not meet Lang's standard for compelling appointment of a special prosecutor. Dixon's alleged violations of ethical rules are informative on, but not determinative of, that question.

The crux of defendant's ethical-rules argument is that, when Dixon used defendant's case as a means to criticize the incumbent State's Attorney, Dixon necessarily provoked public condemnation of defendant as well. Defendant further complains that Dixon publicized, via his Web site and newspaper interviews, the existence of evidence that had been excluded from defendant's trial. According to defendant, Dixon by these actions created an appearance of impropriety, both because he unfairly publicized defendant's case and because his actions left the impression that he had an inappropriately strong interest in the case.

The trial court here, however, considered these arguments and still came to the conclusion that the appearance of impropriety was not sufficient to trigger the appointment of a special prosecutor. In so ruling, the trial court made the following observations, which we find particularly apt:

"The content of the comments was basically that a ruling by this court evidenced the fact that the then State's Attorney had not done his job ***. At no time did Mr. Dixon specifically speak towards the guilt or innocence of this defendant. The comments had to do with his view on whether the State's Attorney had done his job. In fact, in one of the articles Mr. Dixon specifically says he's not commenting on the guilt or innocence of this defendant.

I cannot find that the defendant has pointed to anything of substance in any of the State's Attorney's comments *** that would suggest that he has what I would consider to be

an interest in this case. Saying the search warrant was botched may be an indictment of the prior State's Attorney, but it is not of this defendant."

The trial court also addressed the fact that Dixon's Web site, which contained criticisms of his predecessor's handling of defendant's case, was not deactivated after Dixon's election. The court deemed the Web site's continuation "inappropriate," but it credited the prosecution's representation that Dixon had deactivated the Web site immediately after the hearing at which the defense pointed it out. The court then concluded that the Web site's continuation after Dixon's election, combined with Dixon's pre-election statements about defendant's case, were insufficient to establish an appearance of impropriety. We agree with the trial court's analysis, and we therefore cannot hold that the trial court abused its discretion in denying defendant's motion.

For the contrary position that Dixon was unduly interested in this prosecution, to an extent that his interest tainted defendant's trial with an appearance of impropriety, defendant relies heavily on this court's decision in Lang. In Lang, after a hearing in proceedings related to the defendant's allegedly driving with a revoked license, the prosecutor involved in the case surreptitiously followed the defendant out of court, saw him drive away from the courthouse, and contacted police to inform them that the defendant was driving without a license. Lang, 346 Ill. App. 3d at 678-79. The prosecutor apparently continued to prosecute the case himself--he even argued against the defendant's motion to appoint a special prosecutor--and became the sole witness at trial (which was prosecuted by another attorney from the same office). Lang, 346 Ill. App. 3d at 679. On appeal, this court held that the trial court had abused its discretion by declining to appoint a special prosecutor. See Lang, 346 Ill. App. 3d at 684. This court explained that, "[a]lthough the [prosecutor's] pursuit of the defendant was not wrong in itself, his aggressive behavior toward the defendant created the

appearance that the State's Attorney's office was obsessed with finding evidence against the defendant to obtain a conviction against him at all costs." Lang, 346 Ill. App. 3d at 684. In so holding, the court emphasized that a prosecutor's becoming a witness would not per se require appointment of a special prosecutor, but that "the specific facts of" Lang (Lang, 346 Ill. App. 3d at 685), which "significantly" included the prosecutor's affirmatively and surreptitiously working to catch the defendant in a crime and then becoming the key witness in the prosecution (Lang, 346 Ill. App. 3d at 686), warranted disqualification.

The conduct at issue in this case does not approach that discussed in Lang. As the trial court noted, Dixon's conduct was directed entirely at criticizing his predecessor, and there is no evidence, or argument, that Dixon personally instigated the case or entangled himself in it to an extent that exceeded his role as a prosecutor. Accordingly, Lang does nothing to alter our conclusion that the trial court did not abuse its discretion when it determined that defendant did not demonstrate that Dixon's conduct created an appearance of impropriety sufficient to compel appointment of a special prosecutor.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

JORGENSEN and HUDSON, JJ., concur.