NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 241561-U

NOS. 4-24-1561, 4-24-1565 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 27, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Jersey County |
| MAURICE D. EAST, | ) | Nos. 23CF18 |
| Defendant-Appellant. | ) | 24CF16 |
| | ) | |
| | ) | Honorable |
| | ) | Zachary Schmidt, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Knecht and Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*: In appeal No. 24-2561, the appellate court affirmed, holding (1) defendant
forfeited his arguments concerning the trial court's failure to appoint a special
prosecutor, (2) plain error did not apply, and (3) the court did not err in declining
to appoint conflict counsel (see *People v. Krankel*, 102 Ill. 2d 181 (1984)). In
appeal No. 24-2565, the appellate court reversed and remanded for second-stage
postconviction proceedings where the trial court failed to make any determination
defendant's first postconviction petition was frivolous or patently without merit,
failed to address the effect of a second petition, and improperly relied on input
from defendant and defense counsel when dismissing the petitions.

¶ 2     In appeal No. 4-24-1561, docketed in the trial court as Jersey County case No.

24-CF-16 (the DUI case), defendant, Maurice D. East, was convicted following a jury trial of

aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2020)).

In appeal No. 4-24-1565, docketed in the trial court as Jersey County case No. 23-CF-18 (the

misdemeanor case) defendant pleaded guilty to misdemeanor criminal damage to property (720

ILCS 5/21-1(a)(1) (West 2022)) and was sentenced to one year of conditional discharge. On our own motion, we consolidated the appeals for disposition.

¶ 3        Throughout the proceedings in both cases, defendant at times proceeded *pro se* but at other times had counsel representing him. Also during both proceedings, defendant filed multiple *pro se* pleadings. A special prosecutor was appointed in the misdemeanor case. In the DUI case, defendant filed multiple *pro se* pleadings alleging misconduct or conflicts of interest on the part of the State but never specifically requested the appointment of a special prosecutor. In October 2024, following his conviction in the DUI case, defendant again filed multiple *pro se* pleadings, some of which included allegations of ineffective assistance of counsel. Meanwhile, in the misdemeanor case, defendant filed two *pro se* petitions for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)).

¶ 4        In the DUI case, the trial court conducted a preliminary inquiry into defendant's claims of ineffective assistance of counsel pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). The court ultimately declined to appoint conflict counsel and dismissed the multiple pleadings defendant filed in both cases. In doing so, the court (1) never made any finding that the postconviction petitions filed in the misdemeanor case were frivolous or patently without merit, (2) did not address the effect of there being two petitions filed, and (3) dismissed the petitions after receiving input from defendant and defense counsel.

¶ 5        On appeal in the DUI case, defendant argues the trial court erred in failing to consider whether to appoint a special prosecutor under section 3-9008 of the Counties Code (55 ILCS 5/3-9008 (West 2024)) and by failing to appoint conflict counsel. In the misdemeanor case, defendant argues the court erred in summarily dismissing his postconviction petitions.

¶ 6        In the DUI case, we find (1) defendant forfeited his arguments concerning the trial

court's failure to appoint a special prosecutor by failing to request such relief, (2) plain error does not apply, and (3) the court did not err in declining to appoint conflict counsel. Accordingly, in appeal No. 4-24-1561, we affirm.

¶ 7        In the misdemeanor case, we find the trial court improperly dismissed defendant's postconviction petitions without (1) making any determination the first petition was frivolous or patently without merit and (2) addressing the effect of the second petition. The court also improperly relied on input from defendant and defense counsel when dismissing the petitions. Under such circumstances, we will not independently review the petition to determine if it is frivolous or patently without merit. Accordingly, in appeal No. 4-24-1565, we reverse and remand for second-stage postconviction proceedings.

¶ 8                          I. BACKGROUND

¶ 9              A. Initial Charge and Guilty Plea in the Initial DUI Case

¶ 10        In January 2020, defendant was charged with Class 2 felony DUI (625 ILCS 5/11-501(a) (West 2018)) in what was then docketed as Jersey County case No. 20-CF-2 (the initial DUI case). In August 2021, defendant pleaded guilty. Before sentencing, attorney Susan Jensen and the Unsell Law Firm, P.C. (Unsell Law Firm) entered an appearance on behalf of defendant, and Jensen filed a motion to withdraw the plea. Jersey County State's Attorney Benjamin Goetten and Jersey County Assistant State's Attorney Kevin Tellor represented the State.

¶ 11        In October 2020, the trial court entered an order stating, at the request of the state's attorney's office and the Unsell Law Firm, it was appointing Greene County Assistant State's Attorney Caleb Briscoe as special prosecutor because the Unsell Law Firm was representing Goetten in a pending criminal case. The case was also assigned to a new judge, April Troemper.

¶ 12   In August 2021, despite the earlier appointment of a special prosecutor, Tellor appeared on behalf of the State, and Dayna Switzer of the Unsell Law Firm appeared on behalf of defendant. Tellor told the trial court that, pursuant to negotiations between Switzer, Unsell, and Goetten, defendant would enter a new guilty plea. Defendant then pleaded guilty and was sentenced to three years' imprisonment.

¶ 13   B. The Misdemeanor Case and Appointment of a Special Prosecutor

¶ 14   In November 2022, defendant was initially charged with felony criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2022)), docketed as Jersey County case No. 22-CF-196, alleging defendant knowingly damaged the vehicle of his ex-wife, Dia Darr. That charge was later dismissed *nolle prosequi* and refiled in February 2023 as case No. 23-CF-18. Goetten appeared on behalf of the State. Public defender Scott Schultz initially represented defendant. However, on April 5, 2023, the trial court allowed Schultz to withdraw and defendant to proceed *pro se*.

¶ 15   Defendant filed multiple *pro se* motions to dismiss, memorandums of law, and statements of fact, alleging issues related to a speedy trial, the previous dismissal *nolle prosequi*, his bail, and electronic monitoring. Defendant also alleged that Goetten and the Jersey County State's Attorney's Office were biased against him, committed official misconduct, and had multiple conflicts of interest. Defendant alleged in part that Goetten (1) was related to Darr and had made decisions based on information from the Darr family, (2) falsely told defendant's attorney that Darr had fled the state in fear for her life, (3) committed misconduct and harassment of defendant by his involvement with the plea bargain in the initial DUI case, and (4) had a conflict of interest due to his being represented by the Unsell Law Firm. The State generally denied the allegations but also requested appointment of a special prosecutor.

¶ 16        At the April 2023 hearing on the matter, Goetten appeared and the following colloquy occurred:

> "THE COURT: You also have your Motion for Appointment of a Special Prosecutor. *** I'm not sure the basis for that unless it was related to *** the allegations of misconduct or what—what are you asking or why?
>
> ATTORNEY GOETTEN: Yeah, Judge, *** I did a very vague motion and and *** it is based upon *** the allegation of official misconduct. Also, just taking the case personally, so to speak, and he also *** I believe filed suit against me yesterday perhaps. So, I've got a pending civil suit against me with the Defendant, as well as allegations of official misconduct. So based upon that, we would request a special prosecutor to be appointed."

¶ 17        The trial court appointed the Office of the State's Attorneys Appellate Prosecutor (SAAP) as special prosecutor. Two attorneys from SAAP then entered their appearances and represented the State until defendant pleaded guilty to an amended misdemeanor charge of criminal damage to property in December 2023. On December 6, 2023, the court sentenced defendant to 12 months of conditional discharge.

¶ 18        C. Postconviction Petition and Withdrawal of Plea in the Initial DUI Case

¶ 19        In April 2023, defendant filed a *pro se* postconviction petition in the initial DUI case. Defendant alleged the Jersey County State's Attorney's Office had conflicts of interest, resulting in biased and unfair treatment in violation of defendant's right to due process. Defendant alleged Goetten returned to the case after the dismissal of Goetten's criminal case, continued defendant's prosecution, and assisted with plea negotiations while the Unsell Law Firm still represented defendant. Defendant also made allegations similar to those made in the

misdemeanor case. The trial court appointed the public defender to review the petition.

¶ 20    Schultz later appeared as counsel and told the trial court he believed defendant had a meritorious claim and had consulted with defendant on what could happen if the petition was granted, including a new trial and possible further penalties. Schultz requested a continuance for defendant to consider that information. In a subsequent proceeding, Schultz told the court he understood the State's position was to concede the petition if it proceeded. He further stated the State would likely file a Class X felony DUI charge, which would be an enhancement from the original charge to which the defendant had pleaded guilty.

¶ 21    Donald Schaaf replaced Schultz as appointed counsel. On December 6, 2023, the same day defendant pleaded guilty in the misdemeanor case, Schaaf told the trial court defendant had asked him to proceed with the postconviction claim. The State, represented by Tellor, stated it believed defendant was eligible to withdraw his plea, but once that happened, it would be free to file the charge again as a Class X felony. Schaaf had explained this possibility to defendant. The State stipulated defendant could withdraw his plea, and the court allowed defendant to do so.

¶ 22    The trial court asked if the State wanted a special prosecutor appointed, and the State agreed. The court said the special prosecutor would be appointed to handle this case, and the SAAP attorney who was present as special prosecutor to address the misdemeanor case requested a status hearing in February 2024. The court provisionally appointed the public defender's office to represent defendant and scheduled a status hearing in February 2024.

¶ 23    D. Removal of Special Prosecutor and Refiling of the DUI Case

¶ 24    On December 21, 2023, the trial court entered in the record sheet a notice of disposition stating the State requested removal of SAAP from the case. The court wrote that, after further review, no conflict existed. Tellor then continued to represent the State.

¶ 25		On February 23, 2024, the State filed a new information under case No. 24-CF-16, charging defendant with aggravated DUI (625 ILCS 5/11-501(a), (d)(2)(E) (West 2018)). Defendant filed a *pro se* "petition" for a change of venue, alleging Goetten had conflicts of interest and personal interest in his case. At a hearing that same day, the trial court confirmed the public defender's office was still provisionally appointed and held *pro se* motions would not be considered. Defendant then asked to proceed *pro se*. The court discharged the public defender's office, allowed defendant to proceed *pro se*, and allowed defendant's *pro se* motion to be filed.

¶ 26		Defendant argued there were multiple conflicts of interest in the case because Goetten had a personal interest in the case and had previously recused himself but continued to prosecute the case while the trial court and Tellor were involved in the initial plea bargain. Thus, defendant argued he could not have a fair trial in Jersey County.

¶ 27		Tellor argued the pleading was deficient on its face and defendant failed to provide any evidence to support his allegations. The trial court clarified defendant was basically arguing he believed the State and court had conflicts of interest and could not be fair. Defendant agreed with that statement. The court told defendant that normally a change of venue was relevant to arguments concerning the inability to have a fair and impartial jury. The court stated that, since defendant was alleging a conflict of interest on the part of the State, the petition for a change of venue was not the proper pleading for defendant to seek the relief he was requesting. Thus, the court denied the request for a change of venue. The court then told defendant it could not give him legal advice, but if he was seeking to have individuals removed from his case, he would have to file a different motion.

¶ 28		The trial court subsequently dismissed the initial DUI case at the request of the

State based on the filing of the new DUI charge in case No. 24-CF-16. Because of the new case number, the case was transferred to another judge, Zachary Schmidt.

¶ 29                          E. Pretrial Proceedings in the DUI Case

¶ 30         At the preliminary hearing, defendant chose to continue to proceed *pro se* but stated he was considering hiring counsel. In April 2024, defendant expressed confusion about the initial DUI case, stating he was still on parole even though the case had been dismissed, which confused him and his parole officer. The State, represented by Tellor, explained the history and noted defendant had served his time and was released on mandatory supervised release but had then withdrawn his plea. The State filed the new charge based on the same occurrence. The State said it did not know how the Illinois Department of Corrections would handle that.

¶ 31         In response, defendant stated he did not withdraw his plea. He asserted conduct of the state's attorney's office caused the case to be overturned. The State said defendant was misrepresenting what occurred. The trial court told defendant to file a written motion and a hearing would be set.

¶ 32         On May 31, 2024, defendant asked to be appointed counsel. He also filed a *pro se* motion seeking a hearing on a request for an investigation of misconduct, alleging, in part, that he was sentenced in the initial DUI case while Goetten was recused due to a conflict of interest. He also alleged Goetten had a personal interest in the case, violated ethical rules by making defamatory statements about defendant, and prosecuted defendant while represented by the Unsell Law Firm. Defendant alleged an investigation would shed more light on the matter and show there were conflicts of interest and unfair treatment by the Jersey County State's Attorney's Office.

¶ 33         The same day, the trial court appointed the public defender's office to represent

defendant. Because the court was uncertain what defendant was asking for, it asked for clarification. Defendant said his prior case had been overturned based on wrongdoing by Goetten, resulting in a conflict of interest. Defendant claimed since the initial DUI case was dismissed, his parole officer wanted to know why he was then still on parole. Defendant said he was asking for an investigation to find out what was going on.

¶ 34 The trial court appointed the public defender's office to represent defendant and told defendant to discuss the matter with counsel. Schaaf later appeared again as appointed counsel for defendant and represented him through trial.

¶ 35 F. Trial

¶ 36 In October 2024 a jury trial was held. Tellor represented the State at trial. The State presented evidence showing, in part, that on June 12, 2019, a patrol officer saw defendant's oncoming vehicle cross the center line, and the officer had to swerve to avoid it. After pulling defendant over, the officer smelled a strong odor of alcohol, and defendant exhibited drunken behavior, including droopy eyes, slurred speech, and slow movements. Defendant also failed field sobriety tests. When the officer attempted to obtain a portable breath test, defendant obstructed the officer's ability to do so by putting gum into his mouth and failing to follow instructions. When taken to the police station, defendant was resistive, belligerent, and loud. Defendant refused to sign the warning to motorists or take a breath test.

¶ 37 Defendant testified he had been up for a couple of days because of his work, had not had much sleep, and had consumed caffeine. Defendant was returning home from playing pool at a bar when his phone rang as he was navigating a curve in the road. The phone slid across the seat, prompting defendant to almost stand up in order to reach it. He asserted that he had not consumed alcohol that day and attempted to explain the situation regarding his phone to the

officer, but the officer did not acknowledge his explanation. (The officer did not recall defendant mentioning that he reached for his phone while driving.) Defendant said he wore glasses and that his eyes were tired from being in front of a computer. Defendant suggested he smelled like alcohol because he was asked to break up a fight at the bar between two men who had been drinking heavily. (The officer did not recall defendant mentioning this.) Defendant admitted he refused a breath test. The jury found defendant guilty.

¶ 38                         G. Posttrial Motions in the DUI Case

¶ 39        On October 28, 2024, defendant filed a *pro se* posttrial motion in the DUI case, titled "Motion to Vacate and Reconsider for Ineffective Counsel." Defendant alleged conflicts of interest on the part of the state's attorney's office, which were similar to claims he had previously raised. Defendant alleged those conflicts violated his right to a fair trial. Defendant asked for an investigation by the Attorney Registration and Disciplinary Commission (ARDC) into the alleged misconduct and for dismissal or a new trial.

¶ 40        Two days later, defendant filed a "Petition Complaint of Misconduct," alleging that the arresting officer committed misconduct by attacking defendant while he was in custody. Defendant alleged there was a video recording of the incident.

¶ 41        Defendant also filed a "Petition for Complaint Motion to File Professional Misconduct to ARDC." Defendant restated his previous claims of conflicts of interest involving Goetten and the state's attorney's office. Defendant added Goetten had called defendant and asserted the conflicts no longer existed, and Goetten had no desire to take the case to trial. Defendant argued his case then improperly went to trial when the state's attorney's office should have requested SAAP be assigned to the case or moved for a change of venue. Defendant further alleged Shaaf rendered ineffective assistance by failing to produce phone records and witnesses

to corroborate defendant's version of the facts. Defendant also filed ARDC complaint forms.

¶ 42                    H. Postconviction Petitions in the Misdemeanor Case

¶ 43          Meanwhile, on October 22, 2024, defendant filed a postconviction petition and a brief providing argument in the misdemeanor case, alleging (1) ineffective assistance of counsel for failing to argue motions for dismissal based on the speedy trial statute (725 ILCS 5/103-5 (West 2022)); (2) official and prosecutorial misconduct based on conflicts of interest; (3) due process violations related to the State's actions during the dismissal *nolle prosequi*, the refiling of the case, and periods defendant was held in custody or on electronic monitoring; and (4) issues related to defendant's bail. Defendant attached several exhibits, including affidavits from his son and ex-wife, regarding statements made by the state's attorney office.

¶ 44          On October 29, 2024, defendant filed a second postconviction petition, alleging ineffective assistance of counsel based on counsel's failure to argue abuse of power and official misconduct by the State. Defendant did not specify whether he considered that pleading to be a successive petition or an addition or amendment to the first petition. He attached a brief providing argument that was essentially identical to the brief provided with the first petition.

¶ 45          The record sheet shows both postconviction petitions were filed and docketed as pleadings for postconviction relief but only notes that the October 29, 2024, petition was sent to Judges Schmidt and Troemper.

¶ 46                    I. *Krankel* Proceedings in the DUI Case

¶ 47          On November 1, 2024, before sentencing in the DUI case, the trial court addressed defendant's *pro se* motions. The court stated any ARDC complaints could be filed with the ARDC and the court would not address those. However, the court noted defendant had also made claims of ineffective assistance of counsel, which it addressed .

- 11 -

¶ 48　　　　The trial court asked defendant to elaborate on why he believed he received ineffective assistance of counsel. Defendant said Schaaf did not address the alleged misconduct by the State, and when he spoke to Schaaf after the court told him to do so, Schaff told him they needed to focus on the trial. Defendant claimed he asked Schaaf to subpoena his phone records for his defense to corroborate that he answered his phone when he crossed the center line of the highway. Defendant also said he asked Schaaf to subpoena bartenders who would testify they never served him alcohol. Lastly, defendant claimed Schaaf failed to strike a juror who attended the arresting officer's church and address defendant's accusation the arresting officer attacked defendant at the police station.

¶ 49　　　　In response, Schaaf told the trial court the allegations of misconduct of the State were addressed by Judge Troemper before he entered the case. This was the reason why defendant was allowed to withdraw his plea in the initial DUI case. Regarding phone records, Schaaf stated,

> "The record I did get for one phone record, like he said, it corroborated the story
> that he would've been on the phone at the time he crossed the lane. That did not
> help our defense because that would still give the State a probable cause when
> opening the door for further questions."

¶ 50　　　　Schaaf stated he was unable to contact the witnesses defendant identified to verify their testimony. He said it was the best practice not to subpoena someone to testify without knowing what they were going to say. Finally, the alleged attack involving the officer had been addressed through a motion *in limine*, where a video was excluded. Defendant had not attended that hearing.

¶ 51　　　　The trial court determined the issues were related to trial strategy and did not

constitute ineffective assistance of counsel. The court then held the sentencing hearing.

¶ 52            J. Written Order in Both the DUI and Misdemeanor Cases

¶ 53            On November 6, 2024, the trial court entered a written order listing multiple cases, including the DUI case and the misdemeanor case. The court noted defendant had filed several *pro se* motions, including the October 29, 2024, pleading titled as a petition for postconviction relief. The first postconviction petition was not mentioned. The court summarized its actions on motions that did not allege ineffective assistance of counsel and noted it had questioned defendant on the remaining motions, "which were taken as motions for ineffective assistance of counsel." Defendant alleged counsel rendered ineffective assistance by failing to (1) address misconduct by the State, (2) introduce phone records, (3) call bartenders as witnesses, (4) strike a juror, and (5) address allegations the arresting officer attacked defendant. The court found all of the issues were matters of trial strategy and, as a result, were not bases for a new trial. Thus, the court dismissed the motions and pleadings filed in both cases.

¶ 54            K. Defendant's Motions to Object and Reconsider

¶ 55            Thereafter, defendant filed multiple new *pro se* motions, including a motion objecting to the November 6, 2024, order. He also filed a motion to vacate and reconsider his petition for postconviction relief and identified the misdemeanor case numbers as separate cases filed for postconviction relief. Defendant restated his claims of (1) ineffective assistance of counsel for failing to argue motions for dismissal based on the speedy trial statute, (2) official and prosecutorial misconduct based on conflicts of interest, (3) due process violations related to the State's actions during the dismissal of the misdemeanor case *nolle prosequi*, refiling of the case, and periods defendant was held in custody or on electronic monitoring, and (4) issues related to defendant's bail.

¶ 56                                    L. Dismissal of the Petitions

¶ 57              On December 6, 2024, the trial court held a sentencing hearing in the DUI case.
The court first addressed defendant's new *pro se* motions. The court dismissed the motion to
reconsider the November 6, 2024, order *sua sponte* and noted it had already addressed the issue
of ineffective assistance of counsel at the prior hearing.

¶ 58              After the trial court dismissed the additional motions, defendant stated that he
wanted to appeal his postconviction cases if they were dismissed. Defendant's *pro se* pleadings
were dismissed, and defendant was sentenced to 12 years' imprisonment.

¶ 59              This consolidated appeal followed.

¶ 60                                         II. ANALYSIS

¶ 61                        A. Appeal No. 4-24-1561, the DUI Case

¶ 62              On appeal in the DUI case, defendant argues the trial court erred in failing to
consider whether to appoint a special prosecutor and by failing to appoint conflict counsel.

¶ 63                                    1. *Special Prosecutor*

¶ 64              Defendant argues the trial court erroneously failed to consider appointing a
special prosecutor under section 3-9008 of the Counties Code (55 ILCS 5/3-9008 (West 2024))
in light of defendant's motions alleging misconduct and conflicts of interest on the part of the
State and because of the appointment of special prosecutors in the initial DUI and misdemeanor
cases. The State contends defendant forfeited the issue by failing to specifically request a special
prosecutor and that plain error does not apply because the court had no duty to consider
*sua sponte* whether to appoint a special prosecutor. We agree.

¶ 65              Section 3-9008 of the Counties Code addresses the appointment of special
prosecutors. Subsection (a-10) of section 3-9008 provides as follows:

"The court on its own motion, or an interested person in a cause, proceeding, or other matter arising under the State's Attorney's duties, civil or criminal, may file a petition alleging that the State's Attorney has an actual conflict of interest in the cause, proceeding, or other matter. The court shall consider the petition, any documents filed in response, and if necessary, grant a hearing to determine whether the State's Attorney has an actual conflict of interest in the cause, proceeding, or other matter. If the court finds that the petitioner has proven by sufficient facts and evidence that the State's Attorney has an actual conflict of interest in a specific case, the court may appoint some competent attorney to prosecute or defend the cause, proceeding, or other matter." *Id.* § 3-9008 (a-10).

¶ 66    Subsection (a-10) pertains only to an actual conflict of interest, which our supreme court has recently construed to require "a specific deficiency in counsel's strategy, tactics, or decision-making that is attributable to the alleged conflict." *People v. Muhammad*, 2025 IL 130470, ¶ 52. It has also been held that an actual conflict of interest exists when the state's attorney or the attorney general was interested as (1) a private individual or (2) an actual party to the action. *In re Appointment of a Special State's Attorney*, 2020 IL App (2d) 190845, ¶ 17. When the alleged interest is personal, a defendant must show either (1) the relationship involves significant emotional ties or (2) the defendant suffered actual and substantial prejudice. *People v. Arrington*, 297 Ill. App. 3d 1, 3 (1998). "Speculative allegations and conclusory statements are insufficient to establish an actual conflict of interest." *People v. Yost*, 2021 IL 126187, ¶ 38.

¶ 67    "The decision whether to appoint a special prosecutor under section 3-9008 rests within the discretion of the trial court." *People v. Bickerstaff*, 403 Ill. App. 3d 347, 352 (2010).

- 15 -

Thus, where a court denies a defendant's request for a special prosecutor, the reviewing court will reverse only for an abuse of discretion. See *id.* at 354. "The threshold for finding an abuse of discretion is high—an abuse of discretion will be found only if no reasonable person would take the view adopted by the trial court." *People v. Max*, 2012 IL App (3d) 110385, ¶ 59.

¶ 68                                    a. Forfeiture

¶ 69        The State argues defendant forfeited his argument the trial court erred by failing to consider whether to appoint a special prosecutor by failing to ever specifically request such an appointment or otherwise raise the issue in the trial court.

¶ 70        " 'It is well settled in Illinois that an appellant who fails to raise an issue before the trial court forfeits the issue and may not raise it for the first time on appeal.' " *People v. Rodriguez*, 2021 IL App (1st) 200173, ¶ 58 (quoting *Williams v. Bruscato*, 2019 IL App (2d) 170779, ¶ 24)). Similarly, "[t]o preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion." *People v. Sebby*, 2017 IL 119445, ¶ 48. If a defendant fails to do either of those things, he or she forfeits the right to argue that issue on appeal. *Id.*

¶ 71        Of particular note here is that subsection (a-10) states a defendant may file a petition alleging that the state's attorney has an actual conflict of interest in the cause, proceeding, or other matter. Defendant never did so, nor did defendant ever specially request appointment of a special prosecutor in any of his pleadings or raise the failure of the trial court to consider such an appointment in a posttrial motion.

¶ 72        Defendant argues his *pro se* motions sufficiently stated claims requiring the trial court to consider them as petitions under subsection (a-10). However, while defendant alleged conflict of interest and misconduct claims, he never directly challenged the court's removal of

the special prosecutor and then specifically sought different relief.

¶ 73 The State initially requested a special prosecutor but then sought removal of the appointment, and the trial court agreed there was no conflict. Defendant did not challenge the removal and did not ask for the appointment of a special prosecutor after that time. Instead, defendant's first motion alleging conflicts of interest or misconduct was titled as a motion for a change of venue. The court told defendant that was not the correct motion for relief when defendant was alleging conflicts of interest on the part of the State. After the court dismissed the motion, defendant did not attempt to file a motion seeking appointment of a special prosecutor.

¶ 74 Defendant's next motion sought a hearing. When the trial court expressed confusion about what relief defendant was seeking, defendant told the court he wanted an investigation as to why he was still on parole when the initial DUI charge had been dismissed. At that point, the court appointed counsel and told defendant to confer with counsel about the issue. At no time did defendant request the appointment of a special prosecutor, even when the court inquired about the type of relief sought. Instead, defendant requested an alternative form of relief. Subsequently, defendant was represented by counsel, who also did not request the appointment of a special prosecutor.

¶ 75 Finally, while defendant again raised issues concerning conflicts of interest and misconduct by the State in posttrial motions, he never alleged the trial court failed to consider whether to appoint a special prosecutor. Because defendant never asked the court to consider appointing a special prosecutor and never presented the court with a posttrial motion alleging the court should have considered such an appointment, the argument is forfeited.

¶ 76                                      b. Judicial Estoppel

¶ 77 Defendant also argues judicial estoppel required the appointment of a special

- 17 -

prosecutor when the trial court previously appointed special prosecutors in the initial DUI and the misdemeanor cases.

¶ 78          "Judicial estoppel is an equitable doctrine invoked by the court at its discretion." *Seymour v. Collins*, 2015 IL 118432, ¶ 36. The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *Id.* "Judicial estoppel applies in a judicial proceeding when litigants take a position, benefit from that position, and then seek to take a contrary position in a later proceeding." *Id.*

¶ 79          Five prerequisites are generally required before a court may invoke the doctrine of judicial estoppel:

> "The party to be estopped must have (1) taken two positions, (2) that are factually
> inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings,
> (4) intending for the trier of fact to accept the truth of the facts alleged, and
> (5) have succeeded in the first proceeding and received some benefit from it." *Id.*
> ¶ 37.

¶ 80          Judicial estoppel must be proved by clear and convincing evidence. *Id.* ¶ 39. "[T]hat evidentiary standard properly accounts for a degree of caution with which this doctrine should be considered and applied." *Id.* The doctrine is an extraordinary one which should be applied with caution. See *id.* (citing *Construction Systems, Inc. v. FagelHaber, LLC*, 2015 IL App (1st) 141700, ¶ 38).

¶ 81          Here, just as defendant never asked the trial court to appoint a special prosecutor, he also never raised issues of judicial estoppel. Instead, the State initially requested a special prosecutor but then sought removal of the appointment. The court agreed there was no conflict.

Defendant did not challenge that determination and did not ask for the appointment of a special prosecutor after that time. Thus, defendant never afforded the court an opportunity to consider the issue of judicial estoppel and exercise its discretion regarding the matter, and he never sought to prove its application by clear and convincing evidence. Accordingly, the issue is forfeited.

¶ 82                                    c. Plain Error

¶ 83          Although we determine defendant forfeited his arguments regarding the appointment of a special prosecutor and judicial estoppel, we note defendant also argues we may review the failure of the trial court to consider appointing a special prosecutor for plain error.

¶ 84          The plain-error doctrine is a "narrow exception to forfeiture principles designed to protect the defendant's rights and the reputation of the judicial process." *People v. Moon*, 2022 IL 125959, ¶ 21. A defendant invoking the plain-error doctrine bears the burden of persuasion to demonstrate that a clear or obvious error occurred and that either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant" or (2) "the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Id.* ¶ 20.

¶ 85          "The first analytical step under the plain error rule is to determine whether there was a clear or obvious error." *Id.* ¶ 22. Not all errors, even ones that might demand reversal had the argument been preserved, constitute clear or obvious errors for purposes of the plain-error doctrine. *People v. Hammons*, 2018 IL App (4th) 160385, ¶ 17. Rather, an error is clear or obvious when it is "manifest or patent." *Id.* It is not enough that the defendant identifies "arguable issues that could have been raised in the trial court." *Id.*

¶ 86          If a clear or obvious error occurred, the next analytical step depends on which prong of the plain-error doctrine the defendant invokes. *People v. Jackson*, 2022 IL 127256,

- 19 -

¶ 23. Defendant here argues only second-prong plain error, that the failure of the trial court to consider whether to appoint a special prosecutor was so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process.

¶ 87        Second-prong plain error focuses on the seriousness of the error, not on the strength of the State's evidence. *Id.* ¶ 24. The rationale for the second prong of the plain-error doctrine is that some errors are presumptively prejudicial because they are so grave as to threaten the integrity of the judicial process. *Id.* To constitute a structural error, an error must be "of such magnitude that it undermines the framework within which the trial proceeds, rather than a mere error in the trial process itself." *Id.* ¶ 31. It is rare for an error to meet that standard of structural error. *Id.* ¶¶ 27-28. Structural errors under federal law include "a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction." *Id.* ¶ 29. Illinois courts may recognize additional categories of structural errors, so long as they are similar to the ones recognized under federal law. *Id.* ¶ 30.

¶ 88        Here, defendant argues the trial court was required to appoint a special prosecutor *sua sponte*. We find defendant has failed to show a clear and obvious error occurred.

¶ 89        Under section 3-9008, the trial court, on its own motion, *may* file a petition alleging the need for a special prosecutor. This decision of the trial court is discretionary. *Bickerstaff*, 403 Ill. App. 3d at 352. We are unaware of any cases requiring a trial court to appoint a special prosecutor *sua sponte*. See *People v. McDonald*, 2023 IL App (4th) 221014-U, ¶ 27. This court recently rejected such a claim in *McDonald*.

¶ 90        In *McDonald*, the State charged the defendant with the aggravated battery of a Peoria County assistant state's attorney. *Id.* ¶ 4 A different Peoria County assistant state's

attorney prosecuted the case. *Id.* ¶ 5. The defendant never argued that the prosecutor had a conflict of interest based on his professional association with the victim and a key witness in the case. *Id.* On appeal, the defendant argued the prosecutor had an actual conflict of interest and that there was an appearance of impropriety in him prosecuting the matter, thus requiring the court to appoint a special prosecutor. *Id.* ¶ 19. The defendant argued the trial court's failure to appoint one *sua sponte* constituted second-prong plain error. *Id.* This court found the defendant had not met his burden to show the trial court committed a clear or obvious error by failing to appoint a special prosecutor *sua sponte*. *Id.* ¶ 27. We find the same here.

¶ 91     Here, any need of the trial court to *sua sponte* consider appointment of a special prosecutor was not clear. Defendant's allegations related to the state's attorney's office centered primarily around Goetten's relationship to Darr in the misdemeanor case and his relationship with the Unsell Law Firm in the initial DUI case. In the misdemeanor case, a special prosecutor remained appointed for the duration of the case. Defendant was no longer represented by the Unsell Law Firm when he withdrew his plea in the initial DUI case or in the subsequent proceedings, and while Goetten remained the state's attorney, he did not personally try the DUI case, and Darr was not a witness in that case. To the extent there were conflicts of interest or any misconduct on the part of Goetten in the DUI case, those pertained primarily to the initial DUI case in which defendant obtained the remedy he sought by withdrawing his plea. After that, in the DUI case, a special prosecutor was initially appointed but then removed after the court found there was no conflict. Toller then prosecuted the case. Defendant never specifically challenged that action and instead filed motions seeking different relief.

¶ 92     Under these circumstances, where defendant made allegations primarily concerning conduct in other cases and where he did not challenge the removal of the special

prosecutor in the DUI case and instead asked for different forms of relief, he has not shown a clear and obvious error on the part of the trial court for not considering *sua sponte* whether to appoint a special prosecutor. The court was not required to engage in speculation that issues pertaining to the misdemeanor and initial DUI cases created an ongoing actual conflict of interest in the DUI case requiring the appointment of a special prosecutor. This is especially true when the court had granted the State's request to remove the special prosecutor based on an unchallenged finding there was no conflict. Accordingly, defendant has not shown plain error.

¶ 93                                    2. Krankel

¶ 94        Defendant next contends the trial court erred by failing to appoint conflict counsel after completing its preliminary *Krankel* inquiry.

¶ 95        A *pro se* posttrial claim alleging ineffective assistance of counsel is governed by *Krankel* and its progeny. *People v. Roddis*, 2020 IL 124352, ¶ 34. "The procedure encourages the trial court to fully address these claims and thereby narrow the issues to be addressed on appeal." *Id.* Under this procedure, the court does not automatically appoint new counsel when a defendant alleges ineffective assistance ; rather, the court first examines the factual basis of the defendant's claim. *Id.* ¶ 35. Specifically, the trial court must conduct an adequate inquiry, that is, an inquiry sufficient to determine the factual basis of the claim. *People v. Ayres*, 2017 IL 120071, ¶ 11. In doing so, the court considers the merits of the defendant's allegations in their entirety. *Roddis*, 2020 IL 124352, ¶ 61.

¶ 96        If the trial court determines the claims lack merit or pertain only to matters of trial strategy, the court need not appoint new counsel and may deny the defendant's *pro se* claims. *Id.* ¶ 35. "However, if the allegations show possible neglect of the case, new counsel should be appointed." *Id.* Doing so permits new counsel to independently evaluate the defendant's claims,

while avoiding the conflict of interest trial counsel would otherwise have, and represent the defendant at a hearing on the *pro se* ineffective assistance of counsel claims. *Id.* ¶ 36. "[T]he goal of any *Krankel* proceeding is to facilitate the trial court's full consideration of a defendant's *pro se* claims of ineffective assistance of counsel and thereby potentially limit issues on appeal." *People v. Jolly*, 2014 IL 117142, ¶ 29.

¶ 97        Whether a trial court properly conducted a preliminary *Krankel* inquiry presents an issue we review *de novo*. *Id.* ¶ 28. However, we review a trial court's decision declining the appointment of new counsel following an adequate inquiry for manifest error. *People v. McCarter*, 385 Ill. App. 3d 919, 941 (2008). "Manifest error is that which is 'clearly evident, plain, and indisputable.' " *People v. Johnson*, 206 Ill. 2d 348, 360 (2002) (quoting *People v. Ruiz*, 177 Ill. 2d 368, 384-85 (1997)).

¶ 98        A defendant claiming ineffective assistance of counsel must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for the deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 669-70 (1984).

¶ 99        Decisions as to which witnesses to call or what evidence to present are viewed as matters of trial strategy and generally are immune from claims of ineffective assistance of counsel. *People v. Brown*, 2018 IL App (4th) 160288, ¶ 47. "The only exception to this [general] rule is when counsel's chosen trial strategy is so unsound that counsel entirely fails to conduct any meaningful adversarial testing." (Internal quotation marks omitted.) *Id.*

¶ 100        Here, the trial court allowed defendant to present his concerns and questioned Schaaf, who explained how the issues were matters of trial strategy or were otherwise resolved. Regarding misconduct by the State, defendant did not elaborate on the specific misconduct he

- 23 -

believed Schaaf should have presented to the court. Schaaf then noted defendant had obtained relief for the conflicts and misconduct alleged in the initial DUI case by withdrawing his plea. It was reasonable for Schaaf to then focus on trial, especially when the conflicts and other issues raised did not appear to have a real effect on the DUI case going forward. Schaaf then explained he obtained a phone record, and he indicated that, while it would corroborate defendant's claim, officers nevertheless would have had probable cause to stop defendant and ask him questions. Given the strength of the evidence defendant was impaired, the decision not to focus on phone records was a matter of trial strategy and a reason for crossing the center line due to reasons other than intoxication did not create a reasonable probability that would affect the outcome of the trial.

¶ 101　　　　Schaaf further explained he was unable to contact the witnesses defendant identified to verify their testimony. He stated it was the best practice to not subpoena someone to testify without knowing what they were going to say, which was a reasonable matter of trial strategy. Schaaf told the trial court the alleged attack involving the arresting officer had been addressed through a motion *in limine* where a video was excluded. Defendant, who had not attended that hearing, has not explained how that matter adversely affected his trial.

¶ 102　　　　Further, although defendant contends otherwise, we find the evidence against him was overwhelming, such that counsel's alleged errors would not have created a reasonable probability the outcome of the trial would have been different. Thus, the trial court's determination the issues were matters of trial strategy and did not amount to ineffective assistance of counsel was not manifest error. Accordingly, in appeal No. 4-24-1561, we affirm.

¶ 103　　　　　　　　　B. Appeal No.4-24-1565, the Misdemeanor Case

¶ 104　　　　In the misdemeanor case, defendant argues the trial court erred in summarily

dismissing his postconviction petitions without making any determination they were frivolous or patently without merit.

¶ 105        The Act permits persons under criminal sentences to assert their convictions resulted from a substantial denial of their rights under the United States Constitution or Illinois Constitution. See *People v. Tate*, 2012 IL 112214, ¶ 8. There are three stages to a postconviction proceeding. *Id.* ¶ 9. At the first stage, the trial court independently reviews the postconviction petition and determines whether it is frivolous or patently without merit. *Id.*; 725 ILCS 5/122-2.1(a)(2) (West 2024). If the petition is not dismissed at the first stage, the court advances it to the second stage, where counsel may be appointed to represent an indigent defendant and the defendant has the burden of making a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 33. If the defendant meets this burden, the matter is advanced to a third-stage evidentiary hearing. *Id.* ¶ 34.

¶ 106        At the first stage of postconviction proceedings, a petition "may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *Tate*, 2012 IL 112214, ¶ 9. At this stage, the trial court "considers the petition's substantive virtue rather than its procedural compliance." *People v. Hommerson*, 2014 IL 115638, ¶ 11. "The allegations of the petition, taken as true and liberally construed, must present the gist of a constitutional claim." *People v. Hatter*, 2021 IL 125981, ¶ 24. "[T]o survive summary dismissal, a postconviction petition need present only a limited amount of detail and is not required to set forth a constitutional claim in its entirety." *People v. Brown*, 236 Ill. 2d 175, 188 (2010). Accordingly, "a *pro se* petitioner is not required to allege facts supporting all elements of a constitutional claim to survive summary dismissal." *Id.*

¶ 107        Under the Act, within 90 days after the filing and docketing of a postconviction

petition, the trial court shall examine the petition and enter an order. 725 ILCS 5/122-2.1(a) (West 2024). If the petitioner is sentenced to imprisonment and the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision. *Id.* § 122-2.1(a)(2). If the petition is not dismissed under that section, the court shall order the petition to be docketed for further consideration. *Id.* § 122-2.1(b). We review a first-stage summary dismissal of a postconviction petition *de novo*. *Hatter*, 2021 IL 125981, ¶ 24.

¶ 108        Here, the trial court failed to enter a written order specifying the findings of fact and conclusions of law it made in reaching its decision to dismiss defendant's petitions. Further, the court never addressed all of the matters defendant raised and made no such findings at all. Defendant contends we should reverse on that basis. However, this court may affirm the trial court's judgment on any basis supported by the record. *People v. Wright*, 2013 IL App (4th) 110822, ¶ 32. It is also well-established that the trial court's failure to issue a written order detailing findings of fact and conclusions of law when summarily dismissing a postconviction petition does not require automatic reversal because the requirement is directory, meaning a defendant must establish prejudice to warrant a remedy. *People v. Porter*, 122 Ill. 2d 64, 81-82 (1988). Thus, we address whether it is appropriate for this court to nevertheless affirm the trial court's dismissal of defendant's petitions even though the court failed to address all of the issues and make the required findings.

¶ 109        We first observe defendant was sentenced to conditional discharge after pleading guilty and has served his sentence., Thus, he is not "imprisoned," as normally would be required by the Act in order to file a postconviction petition. Accordingly, there is a question as to whether defendant had standing to file his petitions or if the matter is moot.

¶ 110    A defendant in a misdemeanor case need not be imprisoned to proceed under the Act. *People v. Warr*, 54 Ill. 2d 487, 493 (1973). The requirement that the trial court enter a written order specifying the findings of fact and conclusions of law is also still applicable to a defendant convicted of a misdemeanor who was not imprisoned. See *id.* (noting that, with specific exceptions relating to imprisonment, timeliness, and appointment of counsel, a postconviction proceeding related to a misdemeanor is governed by the Act). Thus, defendant had standing to file his petitions.

¶ 111    Next, in *People v. Prante*, 2023 IL 127241, ¶ 57, our supreme court found a postconviction petition was not moot even after the sentence was served, noting that a defendant's interest in purging himself of the stigma and disabilities which attend a criminal conviction prevents a case from being moot. Accordingly, we find the matter is not moot.

¶ 112    We also observe defendant's petitions were untimely. A postconviction petition in a misdemeanor case must be filed within four months after the rendition of the final judgment if there was a guilty plea and six months if there was a trial. *Warr*, 54 Ill. 2d at 493. The Unified Code of Corrections defines conditional discharge, in part, as "a sentence" and so it constitutes a final judgment on a defendant's conviction. 730 ILCS 5/5-1-4 (West 2024); see *Wakefield v. Department of State Police*, 2013 IL App (5th) 120303, ¶ 5. However, it is improper to summarily dismiss a postconviction petition at the first stage based on untimeliness. *People v. Boclair*, 202 Ill. 2d 89, 99 (2022). Thus, untimeliness does not provide this court with a basis to affirm the dismissal of the petitions. Accordingly, we address the effect of the trial court's dismissal of the petitions, purportedly on the merits, and whether it is appropriate for this court to independently determine whether the petitions are frivolous or patently without merit.

¶ 113    Here, the trial court not only failed to issue a written order detailing findings of

fact and conclusions of law, but it also failed to make any determination at all that the first petition was frivolous or patently without merit. Instead, the court addressed concerns of conflicts of interest or misconduct on the part of the State during the *Krankel* proceedings in the DUI case and never specifically addressed other issues raised by the petitions concerning the misdemeanor case. We further note the court never specifically referred to the first petition at all, which the record sheet suggests the court may have overlooked.

¶ 114          To further complicate the matter, because the trial court addressed the matter as part of the *Krankel* proceedings in the DUI case, the court also relied on statements from defendant and defense counsel. Doing so was improper when summarily dismissing a postconviction petition because it is only after the court has completed an independent examination of the petition that a defendant may have an opportunity to present him or herself and any witnesses in support of the allegations in the petition. See *People v. Barker*, 258 Ill. App. 3d 323, 326 (1994); see generally *People v. Gaultney*, 174 Ill. 2d 410, 420 (1996). Argument by counsel at the first stage is also premature. *Barker*, 258 Ill. App. 3d at 326. This seems particularly improper here, where defendant's trial counsel was asked to provide input about allegations concerning his own alleged deficient representation.

¶ 115          The trial court also made no findings or orders suggesting it considered whether the second petition was actually a successive postconviction petition. See *People v. Lusby*, 2020 IL 124046, ¶ 27 ("The Act itself contemplates the filing of a single petition."). As previously noted, it is unclear whether the court was aware there were two petitions. It also seems clear from the record the court either confused the petitions with the *Krankel* issues and proceedings in the DUI case or recharacterized them as *Krankel* motions; but if it did, it did so in the DUI case, which was the wrong case. This resulted in the court failing to address issues unique to the

misdemeanor case.

¶ 116    In sum, the trial court never addressed the petitions in the correct context at all. This court has declined to independently examine the record to determine whether a defendant's postconviction petition was frivolous or patently without merit when the trial court mistakenly failed to make any such determination. See *People v. Carter*, 383 Ill. App. 3d 795, 798 (2008). In doing so, this court noted, "The Act's legislative scheme provides for a trial court initially to (1) make that determination and, if it does not so decide, (2) then proceed to the second stage of postconviction proceedings." *Id.* Thus, this court reversed and remanded for second-stage proceedings. *Id.* A remand for second stage proceedings has also been required when the trial court prematurely heard argument on a petition. See *Barker*, 258 Ill. App. 3d at 326-27.

¶ 117    Accordingly, in appeal No. 4-24-1565, we reverse the trial court's dismissal of defendant's postconviction petitions and remand for second-stage proceedings. This decision does not constitute any statement by this court regarding the merits, if any, of defendant's petitions. See *Carter*, 383 Ill. App. 3d at 798.

¶ 118                              III. CONCLUSION

¶ 119    For the reasons stated, the judgment of the trial court in the DUI case is affirmed. In the misdemeanor case, we reverse and remand for second-stage postconviction proceedings.

¶ 120    No. 4-24-1561, Affirmed.

¶ 121    No. 4-24-1565, Reversed and remanded.